[No. 988.]

# THE STATE OF NEVADA, Respondent, v. JOHN DAVIS, Appellant.

Constitution—Title of an Act.—The act supplementary to an act entitled " An act concerning crimes and punishments, approved November 26, 1861," does, in its title, express the subject embraced therein, as required by art. IV, sec. 17 of the constitution.

Escape from Jail—Bad Condition of Jail no Excuse. — Defendant admitted that he left the jail, and offered to prove in excuse and mitigation of his act, that the condition of the jail was intolerable, and injurious to his health, without offering to show that he had used any lawful means of relief before escaping from the jail: *Held*, that the testimony as to the condition of the jail was properly excluded.

Idem—Plea of Necessity.—The plea of necessity in justification of acts which, without such necessity, constitute the crime charged, is unavailable without a showing that lawful measures were first adopted to accomplish the desired result.

What Constitutes an Escape.—If a prisoner, with or without force, goes away from his place of lawful custody without authority of law, the offense of escaping from jail is complete.

REASONABLE DOUBT—EXPLICIT INSTRUCTIONS.—The court instructed the jury as follows: "A reasonable doubt in the law is one founded upon a full and fair consideration of all the circumstances and evidence in the cause, both for the state and for the defendant, and is not a doubt resting upon mere conjecture or speculation:" *Held*, correct as far as it goes; that if the defendant desired a more elaborate definition, he should have asked for it.

COMPETENCY OF JUROR—HYPOTHETICAL QUESTIONS IRRELEVANT.—Defendant's counsel asked a juror: "If the prosecution in this case should claim, and a court should hold, that a man confined in jail under a charge of felony, leaving the jail, the doors being open, without force, is guilty of an escape under the law, then have you formed an unqualified opinion concerning the guilt or innocence of the defendant?" *Held*, that the question was properly excluded.

IDEM—CHALLENGE PRACTICE.—The proper practice is to dispose of each challenge in the order named in the statute. If there is no challenge to the panel, or if it is made and overruled, questions appertaining alone to general disqualification should then be asked, and a challenge for that cause interposed or waived; next, questions competent in view of a challenge for implied bias only should be propounded, and a challenge for that cause interposed or waived; and last, the same course should be pursued for actual bias.

IDEM—IMPLIED BIAS—DEFENDANT'S CHARACTER.—The fact that a juror had formed an unfavorable opinion of defendant's character will not sustain a challenge for implied bias.

APPEAL from the District Court of the Second Judicial District, Ormsby County.·

The facts sufficiently appear in the opinion of the court.

*N. Soderberg*, for Appellant.

I. The act under which defendant was convicted (1 Comp. Laws, 589) is unconstitutional. (Const. Nev., Art. IV., sec. 17; *State* v. *Silver*, 9 Nev. 227; *Parkinson* v. *State*, 14 Md. 194.)

II. Defendant had a right to show, in mitigation and defense, that an absolute necessity for his leaving the jail existed. It was for the jury to decide whether the facts were sufficient to justify. It was error to exclude the testimony as to the filthy and unwholesome condition of the jail. This testimony was also material as to the question of intent with which defendant left the jail. (1 Comp. Laws, 2307–8;

*State* v. *Gardner*, 5 Nev. 377; 37 Tex. 338; Bishop on Cr. L. 370.)

III. The definition of a reasonable doubt given by the court was calculated to mislead the jury. (*State* v. *Rover*, 11 Nev. 343; 51 Cal. 374.)

IV. It was error to deny defendant the opportunity of ascertaining whether the juror Stampley was competent. It was the juror's duty to know the law without any statement and he had the right to be informed what the law was. This ruling of the court deprived defendant of a substantial right.

Hypothetical questions are not always objectionable. (*State* v. *Arnold*, 12 Iowa, 479; *Freeman* v. *People*, 4 Denio, 9.)

If Stampley entertained the hypothetical opinion stated in the bill of exceptions, defendant would have been entitled to submit the question of actual bias in Stampley to triers. (*People* v. *Bodine*, 1 Denio, 281; *State* v. *Benton*, 2 Dev. & B. 196; *People* v. *Mather*, 4 Wend. 229.)

*M. A. Murphy, Attorney-General,* for Respondent.

The provisions of sec. 17 of art. 4 of our constitution is accomplished when the law has but one general object which is fairly indicated by its title.    (Cooley on Const. Lim. sec. 144; *Humboldt Co.* v. *Churchill Co.* 6 Nev. 30; *The People* v. *Mahaney*, 13 Mich. 495; *Morford* v. *Ungar*, 8 Iowa, 82; *Bright* v. *McCullough*, 27 Ind. 225; *Mayor et al* v. *Maryland*, 30 Md. 118; *Davis* v. *The State*, 7 Id. 159; *Keller et al.* v. *Id.* 11 Id. 531; *Parkinson* v. *Id.* 14 Id. 190; *State ex rel.* v. *Town of Union*, 3 N. J. 351; *The Sun Mut. Ins. Co.* v. *Mayor of N. Y.*, 8 N. Y. 252.)

II. There was no error in excluding the testimony of Hart.    The escape of a person arrested upon criminal process whether effected with or without force, before he is discharged by due course of law, is punishable as an offense against public justice. (2 Bish. Crim. Law, sec. 1093; *State* v. *Doud*, 7 Conn. 386; *Riley* v. *The State*, 16 Id. 47.)

III. The instruction as to reasonable doubt is correct. (*United States* v. *Knowles*, 4 Saw. 521; *United States* v. *Foulke*,

6 McLean, 355; *Long* v. *The State*, 38 Ga. 508; *Commonwealth* v. *Drum*, 58 Pa. 22.)

IV. The questions asked the juror Stampley were properly excluded. The point to determine as to the qualification of a juror is whether at the time of his examination he has an unqualified opinion as to the guilt or innocence of the accused, and not what might be the state of his mind after hearing the evidence. (*People* v. *Johnston*, 46 Cal. 78; *State* v. *Arnold*, 12 Iowa, 479.) The forming of an opinion as to the bad character of the accused is no ground for challenge. (*People* v. *Allen*, 43 N. Y. 34; *People* v. *Mahoney*, 18 Cal. 180.)

By the Court, LEONARD, J.:

Appellant was convicted of the crime of escape from the jail of Ormsby county, when lawfully confined therein upon a charge of felony.

This appeal is taken from the judgment, from the order overruling appellant's motion in arrest of judgment, and from an order denying his motion for a new trial.

1. It is first urged by counsel for appellant that the statute under which appellant was indicted and convicted is unconstitutional, and therefore void, because it does not, in its title, express the subject embraced therein, as is required by section 17 of Article IV of the constitution. That section is as follows: "Each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." * * * The title of the statute in question (1 Comp. Laws, 589) is as follows: "An act supplementary to an act entitled 'An act concerning crimes and punishments,' approved November 26, 1861."

It is a plain proposition, that if the statute last mentioned is unconstitutional for the reason stated, then the principal statute of the state in relation to crimes and punishments is unconstitutional for the same reason, because it is only entitled, "An act concerning crimes and punishments," and embraces murder, arson, robbery, larceny, and other crimes. (1 Comp. Laws, 557.) The fact just stated is no good

reason for declaring the statute in question constitutional, if it is not so, but it is an additional reminder of the necessity of carefulness in coming to a proper conclusion. If the statute in question, in relation to escapes, would have been constitutional, had it been embodied in the original act, under the title above stated, it must be constitutional now, under the title, "An act supplementary" thereto.

The constitution only requires that each law "shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." The subject of the statute to which the one under consideration is supplementary, is crimes; the matters properly connected therewith are the punishments therefor, and both are briefly expressed in the title. It embraces but one subject and matter properly connected therewith.

Escape, larceny, robbery, and murder are different crimes, but they are upon the same subject, viz.: *crimes.* The title truly and fairly indicates in general terms the subject of the statute. Nothing is contained therein that is not suggested by the title, and the title affords a clue to the contents of the statute. The objection under consideration is not well taken. (*Humboldt county* v. *The County Commissioners of Churchill county,* 6 Nev. 34; *Bright* v. *McCullough, Treasurer, etc.,* 27 Ind. 225; Cooley's Const. Lim. 141; *Davis* v. *The State,* 7 Md. 159; *Parkinson* v. *The State,* 14 Id. 196; *Mayor, etc.* v. *The State,* 30 Id. 118; *The Sun Mut. Ins. Co.* v. *The Mayor, etc.* 8 N. Y. 252.)

2. The court refused to permit Hart, witness for appellant, to answer the following question:

"What was the condition of the jail on and before the twentieth day of March last (the date of the alleged escape), as to whether it was a filthy, unwholesome, and loathsome place, full of vermin and uncleanliness, or was it a clean, properly-kept institution?"

Counsel stated that he asked the question "for the purpose of showing that defendant had been confined in the jail a long time; that the condition of the jail during that time and on the twentieth day of March, 1879, was absolutely intolerable and injurious to the health of the defend-

ant. This testimony is offered in excuse and in mitigation of the defendant's leaving the jail, and to show an absolute necessity of his leaving."

Counsel offered to prove the above state of facts by witness Hart and others. Without stating other reasons in support of the court's action, it is enough to say that appellant admitted leaving the jail. By the means employed he gained his liberty before he was delivered by the course of the law. In other words, he intentionally escaped from the jail, and in justification offered the testimony of Hart and others in relation to its condition. Appellant said in substance: "When legally confined in jail upon a charge of felony I escaped, but the condition of the jail was such that I was under the necessity of doing so." We consider it unnecessary to decide whether or not the proposed testimony would have been admissible in justification had a proper foundation be laid therefor, that is to say, had appellant shown or offered to show that he exhausted the lawful means of relief in his power before attempting the course pursued. It was not shown or claimed that he had even complained to the sheriff or the board of county commissioners, or that he had endeavored to obtain relief by any lawful means. The plea of necessity in justification of acts which, without such necessity, constituted the crime charged, was unavailable without also showing that lawful measures had first been adopted to accomplish the desired result. A person confined by the law should be delivered by the law; and no other means can be justified in any case, until the officers in charge, and the law, refuse him relief; and then the evidence of the necessity must be clear and conclusive, and the act must proceed no further than the emergency absolutely requires. (Bishop on C. L. vol. 1, sec. 352.)

The necessity, to excuse, must be real and urgent, and not created by the fault or carelessness of him who pleads it. "Where the law," observes Story, J., "imposes a prohibition, it is not left to the discretion of the citizen to comply or not; he is bound to do everything in his power to avoid an infringement of it. The necessity which will excuse

him for a breach must be instant and imminent; it must be such as leaves him without hope by ordinary means to comply with the requisitions of the law. It must be such, at least, as can not allow a different course without the greatest jeopardy of life and property. He is not permitted, as in cases of insurance, to seek a port to repair, merely because it is the most convenient, and the most for the interest of the parties concerned. He is, on the contrary, bound to seek the port of safety which first presents itself, if it be one where he may go without violation of the law. In a word, there must be, if not a physical, at least a moral, necessity to authorize the deviation. Under such circumstances the party acts at his peril; if there be any negligence or want of caution, any difficulty or danger which ordinary intrepidity might resist or overcome, or any innocent course which ordinary skill might adopt or pursue, the party can not be held guiltless, who, under such circumstances, shelters himself behind the plea of necessity." (Id. sec. 352.)

The court did not err in rejecting the evidence offered in relation to the condition of the jail.

3. The refusal to give the second and fourth instructions asked by appellant was not error. There was no proof that the door of the jail was open; but if there had been the result would have been the same. Appellant testified that the door was unlocked. Bishop defines an escape as the "going away by the prisoner himself, from his place of lawful custody, without a breaking of prison." (Bish. Crim. Law, vol. 2, sec. 1065. See, also, Hale's Pleas of the Crown, vol. 1, 605, note; Comp. Laws, sec. 2466, *et seq.*)

The keeper of a prison, or other officer having a prisoner in custody, has no right to consent to an escape; and if he does, the escaping prisoner is no less guilty. (Bish. Crim. Law, sec. 1104, and cases there cited.)

And, for reasons before stated, the fifth instruction offered by appellant is not law. Besides, had it been given, the jury would have been justified in finding for appellant, if the jail was, to any extent, loathsome and injurious to his health. Such a doctrine finds no sanction in the books, and is hardly entitled to notice.

4. It is urged that the court erred in instructing the jury that "a reasonable doubt in the law is one founded upon a full and fair consideration of all the circumstances and evidence in the cause, both for the state and for the defendant, and is not a doubt resting upon mere conjecture or speculation."

Our most distinguished jurists have found it difficult to define reasonable doubt to their entire satisfaction. This court has adopted as correct the definition given in *Commonwealth* v. *Webster*, 5 Cush. 320. See *State* v. *Rover*, 11 Nev. 344. The instruction in question was evidently taken from *United States* v. *Knowles*, 4 Saw. 521, where Justice Field defined it in the precise words used in this case. See further, *Bray* v. *State*, 41 Tex. 561. It would be better, probably, if courts would use the language that has been passed upon and settled as correct, but a careful examination of the portion of the instruction approved in *Rover's case*, and the one given here, shows that they are substantially the same. Certainly that given in this case contains nothing erroneous. It is, at any rate, correct as far as it goes. If counsel for appellant desired a more elaborate definition, he should have asked for it. (*State* v. *Smith*, 10 Nev. 122.)

5. The jury were instructed that "if a person legally committed to the custody of a sheriff to answer to a charge of felony, and by such sheriff confined in the jail of his county, escape or depart therefrom, with or without force, he is guilty of escape from such jail; and if the jury find from the evidence in this case that the defendant, John Davis, was so committed and confined on or about March 20, 1879, in the county jail of Ormsby county, State of Nevada, and that while so committed and confined * * * he did depart from said jail without authority of law, then the jury are instructed that they should find the defendant guilty, as charged in the indictment."

The first portion of the instruction properly defines an escape from jail (Bish. C. L. sec. 1065; *State* v. *Doud*, 7 Conn. 386; Comp. Laws, 2467); and if appellant did what is stated in the last part, he was necessarily guilty; because

the doing of those acts completed the crime, even according to the theory of counsel for appellant, unless appellant was justified under the plea of necessity, and as we have seen, proof of the filthiness of the jail was not a justification without showing, or offering to show, that he first sought relief by legal means, even though he would have been justified had such proof been made or offered. So there was no proof of justification. No doubt an *intent to escape* was necessary, but no other intent was required, and that was admitted under a plea of justification which was wholly unsupported by the evidence.

6. One of the jurors, O. K. Stampley, testified upon his *voir dire*, that he knew the defendant and had read accounts in the local newspapers of the alleged escape; that he did not know what constituted the crime of escape from jail, and therefore could not answer whether he had formed or expressed an unqualified opinion touching defendant's guilt or innocence.

Counsel for appellant then asked the juror this question: "If the prosecution in this case should claim, and the court should hold, that a man confined in jail under a charge of felony, leaving the jail, the doors being open, without force, is guilty of an escape under the law, then have you formed an unqualified opinion concerning the guilt or innocence of the defendant?"

Counsel for the state objected to the question and the court excluded it, because it was hypothetical.

Counsel then asked: "Have you ever formed an unfavorable opinion of defendant's character?" That question was also excluded,

Appellant then challenged the juror for *implied* bias for having formed or expressed an unqualified opinion of the guilt or innocence of the defendant. No challenge was interposed for *actual* bias. Appellant exhausted all of his peremptory challenges, and Stampley was sworn as a juror to try the cause.

The criminal practice act (sec. 353) provides that challenges of either party must be taken separately in the following order, including in each challenge all the causes of

the challenge belonging to the same class: "First—To the panel. Second—To an individual juror for general disqualification. Third—To an individual juror for implied bias. Fourth—To an individual juror for actual bias." Each party has an absolute right to interpose any one or all of the above-named challenges for cause, in the order named.

A challenge to the panel and for implied bias must be tried by the court, and for actual bias by triers.

One challenge has no connection with another, and the grounds for each are equally independent of others.

Questions that are competent to sustain a challenge for *actual* bias may be entirely incompetent in view of a challenge for *implied* bias. Questions to sustain a challenge for general disqualification are improper in view of a challenge for either implied or actual bias. Such being the case, the proper practice is to dispose of each challenge in the order named in the statute. If there is no challenge to the panel, or if it is made and overruled, questions appertaining alone to general disqualification should then be asked and a challenge for that cause interposed or waived; next, questions competent in view of a challenge for implied bias only, should be propounded and a challenge for that cause interposed or waived; and last, the same course should be pursued for actual bias. With such a practice the court and counsel can act intelligently, and neither party can be prejudiced. We are satisfied that such was the method intended by the legislature. In this case the court was justified in thinking (and we have no doubt that such was the fact) that the questions excluded were asked for the purpose of laying the foundation for a challenge for implied bias. The first was plainly for that purpose; the second followed immediately after the exclusion of the first, and then came a challenge for that cause only.

If the questions were not competent in view of a challenge for implied bias, but were competent to sustain a challenge for actual bias, then appellant should have challenged for the latter cause after his first challenge had been denied.

Counsel for appellant says: "It was error to deny de-

fendant an opportunity to ascertain whether Stampley was a competent juror. He answered that he did not know what constituted the crime of escape from jail, and for that reason could not say whether he entertained an unqualified opinion of defendant's guilt."

In the first place, it is plain that the juror did not entertain an unqualified opinion of appellant's guilt or innocence. He certainly had no definite, certain, positive opinion whether appellant was guilty or innocent of the crime charged, although he stated in general terms that he could not answer whether he had such opinion or not. If, without knowing the law, he had been so unreasonable as to form such an opinion, he then knew it, and must have answered in the affirmative. But such was not the case, and had he been pressed to an answer, he must have said that he had not such opinion, and could not have, until he knew what constituted the crime charged. His idea was, and properly too, that he should not arrive at a conclusion upon the question of guilt or innocence without knowing the law as well as the facts. He did not say he believed the newspaper accounts, but admitting that he did believe what he read, still, being a candid, reasonable man, he could not say he had the disqualifying opinion. Had the juror said: "I do not know all the facts, therefore I cannot say whether I have formed an unqualified opinion or not," it would hardly be claimed that he could have been asked the following question: "If the proof should show, and the defendant should admit, that when confined in jail on a charge of felony he, without force, left the jail and departed therefrom, then have you formed an unqualified opinion as to his guilt or innocence?" But why not, according to the theory of counsel for appellant, inasmuch as the proof and admission were as stated in the question? Was not the opinion asked for as purely hypothetical as the one supposed would have been? True, it may be said that, in the case in hand, the juror's opinion, if he would have had any, depended upon the proper construction of the statute yet to be ascertained, and in the other upon facts to be proven; still, if as claimed, the question under consideration was proper because it correctly stated the law

under which appellant was tried and convicted, we are unable to perceive why the one supposed would not have been equally proper, the proof and admission having been as therein stated.

Any question was proper which would have shown whether, as he then stood, he had formed or expressed an unqualified opinion of appellant's guilt or innocence. But none were competent which instructed him upon the law or the facts, to the end that he might form an opinion after receiving the information. Jurors are presumed to take the law from the court, and to gather the facts from the evidence admitted. But if they have formed a definite, fixed opinion—no matter why, whether upon a knowledge of the law and the facts, or either or neither—they are disqualified. On the other hand, if for any reason they have not such opinion without further instruction or information, then upon a challenge for implied bias, the law declares them competent. The law attaches the disqualification to the fact of forming or expressing an unqualified opinion upon the guilt or innocence, and does not look beyond to examine the occasion, or weigh the evidence on which that opinion is founded. (*People* v. *Mather*, 4 Wend. 243; *State of Iowa* v. *Thompson*, 9 Iowa, 190.) If a juror is in any manner, or for any cause, biased or prejudiced, by reason of what he knows, or because of his feelings, that fact can be ascertained only in view of, or upon a challenge for, actual bias.

The court did not err in excluding the first question. (*People* v. *Reynolds*, 16 Cal. 132; *People* v. *Mather*, *supra*; *People* v. *Honeyman*, 3 Denio, 123; *People* v. *Mallon*, 3 Lansing, 230; *People* v. *Stout*, 4 Parker's Crim. R. 71; *People* v. *Freeman*, 4 Denio, 10; *Schoeffler* v. *The State*, 3 Wis. 718; *McGowan* v. *The State*, 9 Yerg. 193; *Armistead's case*, 11 Leigh, 658; *State* v. *McClear*, 11 Nev. 39.)

7. If the juror had answered the second question in the affirmative, the answer would not have sustained a challenge for implied bias. (*People* v. *Allen*, 43 N. Y. 34; *People* v. *Mahony*, 18 Cal. 186.) That question might have been competent to sustain a challenge for actual bias, to be consid-

ered with other matters by triers in ascertaining the state of the juror's mind; but as before stated, it was evidently asked for the purpose of sustaining a challenge for implied bias, and no challenge was interposed for actual bias.

"It is not in general sufficient to justify the triers in setting aside a juror as not indifferent that he has formed an unfavorable opinion of the character of the accused. If it should be, notorious offenders could not be tried at all. Whether it would be a valid objection that he had read a report of the facts in the public newspapers, and had thereby imbibed an impression against the accused, must, of course, depend upon the strength of such impression. If it should be weak it would not disqualify the juror. If, however, it should be so strong that it would have any influence in forming his opinion on the trial, then he would not stand indifferent and should be rejected." (2 Barb. 222.)

We find no error in the record, and the judgment and orders appealed from are affirmed.