[No: 1123.]

THE STATE OF NEVADA EX REL. THE BOARD OF SCHOOL TRUSTEES OF VIRGINIA CITY DISTRICT, STOREY COUNTY, NEVADA, RELATOR, v. THE BOARD OF COUNTY COMMISSIONERS OF STOREY COUNTY, NEVADA, RESPONDENT.

STATUTE AUTHORIZING COUNTY COMMISSIONERS TO TRANSFER CERTAIN FUNDS (STAT. 1879, 45) CONSTITUTIONAL.—*Held*, that the statute embraced but one subject—the transfer of surplus moneys from one fund to another—and that it does not violate the provisions of section 17, article IX., of the constitution.

IDEM—MONEYS IN FUND.—*Held*, that the statute authorized the transfer of money which was then in the railroad and sinking fund and of all moneys then due to the fund and thereafter paid and deposited therein.

IDEM—NOT REPEALED.—The statute of 1879 was not repealed by the act authorizing the county commissioners to loan or transfer surplus money from one fund to another. (Stat. 1879, 32.)

IDEM—SCHOOL FUND.—Upon a review of the facts: *Held*, that it is the official duty of the board of county commissioners of Storey county to transfer the surplus money in the railroad interest and sinking fund to the school fund of said county.

APPLICATION for mandamus.

The facts are stated in the opinion.

*Ogden Hiles* and *Woodburn & Mitchell*, for Relator:

I. It is the duty of the board of commissioners to transfer the surplus moneys remaining in the railroad interest and sinking fund of Storey county, under the provisions of the act of the legislature of the state of Nevada, approved February 14, 1879. (Stat. 1879, 35.)

II. By the act of 1879 the legislature intended to provide, and did provide, that any surplus money remaining in the railroad interest and sinking fund should be transferred to the

school fund of the county, thereby making a specific disposition of any surplus remaining in the railroad interest and sinking fund, so that it should be available for the use and benefit of a particular fund of the county. The school fund of the county is not to be deprived of any of the benefits of the act of 1879, because some delinquent or litigious taxpayer failed to pay into the railroad interest and sinking fund the money in controversy at the time such money ought to have been paid in.

III. The act of February 9, 1881, is not a repeal of the act of 1879, because there are no express words favoring a repeal, and there can be no repeal by implication of the act of 1879, the maxim of the law being "*generalia specialibus non derogant.*" It can no more operate as a repeal of the act of 1879 than it can to repeal section 43 of the act to provide for the maintenance and supervision of the public schools of this state. (*Cole* v. *Supervisors*, 11 Iowa, 554; *Spencer* v. *The State*, 5 Ind. 41; *The Evergreens*, 47 N. Y. 216; *Ex Parte Comm'rs of Cent. Park*, 50 Id. 493; *Tracy* v. *Goodwin*, 5 Allen, 411; *Pearce* v. *Bank of Mobile*, 33 Ala. 693; *State ex rel. Flack* v. *Rogers*, 10 Nev. 319; *Thorpe* v. *Schooling*, 7 Nev. 15; Sedgwick on Const. Con. 98, 99 [note *a*] and 98, 99, 100, 101, *et seq.*) The act of 1879 is a special statute referring to a particular subject, making a special particular disposition of a special fund in a particular county in this state, while the act of 1881 is a general statute, referring to the several counties in this state, and devolving new duties or powers on all boards of county commissioners in the state with reference to all the funds in the county, and is constitutional, the subject of the act being fairly expressed in the title. (*Humboldt Co.* v. *Churchill Co.*, 6 Nev. 31.)

*W. E. F. Deal,* for Respondent:

I. The act of the legislature, approved February 14, 1879, is unconstitutional. It is contrary to the provisions of section 17, article IV., of the constitution, in the following respects:

(*a*) The subject of the act is not expressed in the title. The title does not express anything from which the subject of the act can be determined.

(*b*) The act embraces, more than one subject—the transfer of money from the railroad interest and sinking fund to the school fund, and the transfer of moneys from the court-house bond fund to the general fund.

The two subjects have no connection one with the other, and it was to prevent such legislation as this that such provisions are placed in the state constitution. (Cooley on Const. Lim. 141, 144.).

II. The act of 1879 only authorizes the transfer of the moneys which were then in the railroad interest and sinking fund. This is apparent, not only from the language of the act itself, but from the circumstances under which it was passed. At the time of the passage of the act the sum of seventeen thousand nine hundred and thirty-two dollars and eighty cents legally belonged to the railroad interest and sinking fund, after the payment of all the bonds and interest thereon, issued by Storey county to the Virginia and Truckee Railroad Company, under the act of 1869. It was not then known that any more money would come into the fund. The county commissioners had on the thirteenth day of March, 1878, without any authority to do so, transferred the surplus remaining in the "railroad interest and sinking fund" to the school fund. In the legislature of 1879, an attempt was made to legalize this act of the board by introducing assembly bill No. 35, but the bill failed to pass the senate on account of its unconstitutionality. After the failure of assembly bill No. 35, senate bill 64 (the act of 1879) was passed and approved by the governor. This act was for the purpose of legalizing the act of the board.

III. The act of 1881 repeals the act of 1879 by necessary implication. There is such a positive repugnancy between the two that they cannot be consistently reconciled. (Potter's Dwarris, 154, 160.)

By the Court, LEONARD, C. J.:

This is an application for a writ of mandate to compel the board of county commissioners of Storey county to transfer the sum of eighteen thousand six hundred and seven dollars and forty-three cents from the "railroad interest and sinking

fund" to the school fund of said county. The facts are as follows: In 1869 the legislature passed "An act to authorize the commissioners of Storey county to issue to the Virginia and Truckee Railroad Company bonds to the amount of three hundred thousand dollars, and to provide for the payment of the same." By that statute it was made the duty of the board of county commissioners to levy and collect, annually, until all the bonds issued under the provisions thereof should be fully paid, a tax of one-half of one per cent. on all the taxable property of Storey county, to be applied exclusively to an interest and sinking fund for the payment of the bonds and coupons, to be issued as therein provided. The statute also provided that the said tax should be levied, assessed and collected in the same manner and by the same officers as other county taxes; also, that the proceeds of said tax should be placed by the county treasurer in a separate fund, to be known as the "railroad interest and sinking fund," and should be applied, first, to the payment of the interest on said bonds, as the same should become due; and, second, to the redemption of said bonds as therein prescribed.

The bonds of the county, to the amount of three hundred thousand dollars, were issued, payable to the Virginia and Truckee Railroad Company, as required by law. On the third day of April, 1876, before said bonds and the interest thereon had been fully paid, the board of county commissioners of Storey county, in pursuance of law, levied an *ad valorem* tax of fifty cents on each one hundred dollars value of all the taxable property within said county, including the proceeds of mines and mining claims, and directed the same to be collected and paid, for the purpose of creating an interest and sinking fund for the payment of the bonds and coupons issued in pursuance of the statute of 1869, above mentioned, for the fiscal year commencing January 1, 1876, and ending December 31, 1876. The board also ordered that this tax be applied exclusively to the payment of said coupons, and to the creating of a sinking fund for the payment of said bonds. Under an assessment of the proceeds of the Consolidated Virginia and California Mining Companies' mines, for the fiscal year 1876, there became due to the "railroad interest and

sinking 'fund " the sum of seventy-four thousand four hundred and twenty-nine dollars and seventy cents.

This entire tax became delinquent, and by reason thereof, a penalty of twenty-five per cent. thereon, to-wit, eighteen thousand six hundred and seven dollars and fifty-two cents, was added by law to the original tax.

Suits were thereafter commenced for the collection of all taxes and penalties due from said companies, including the amount due to the railroad interest and sinking fund for said fiscal year.

Thereafter, in May, 1877, said companies paid into the county treasury the entire original taxes due from them, including the amount due to the railroad interest and sinking fund, but did not pay the penalties imposed by law by reason of non-payment at the time required. At a subsequent date (March, 1882), and after the railroad bonds and coupons had been fully paid, all the penalties due from said companies were paid.

Of this amount, thirty-nine thousand seventy-five dollars and sixty-one cents belonged to Storey county, and eighteen thousand six hundred and seven dollars and fifty-two cents thereof accrued on account of non-payment of the sum due to the railroad interest and sinking fund.

On the fourth day of May, 1882, the county treasurer apportioned the moneys belonging to Storey county, and transferred to and deposited in the railroad interest and sinking fund the sum of eighteen thousand six hundred and seven dollars and fifty-two cents, where it now remains.

On the part of relator it is claimed that this money should be transferred to the school fund, and that it is the duty of respondent to make the transfer; while the latter denies that such is its duty, but is of the opinion that this money of right belongs to the general fund of the county. The claim of relator is based upon a statute which is as follows : " The county commissioners of Storey county are hereby authorized and directed to transfer the surplus money, if any, remaining in the railroad interest and sinking fund of said county to the school fund of said county; also, said county commissioners of Storey county are hereby further authorized and directed to

transfer the surplus money, if any, remaining in the court-house bond fund to the general fund of said county."

This statute is entitled "An act to authorize the county commissioners of Storey county to transfer certain funds," and it was approved February 14, 1879. The last bond was paid on or before March 13, 1878, at which time there remained as a surplus, in the railroad interest and sinking fund, nearly eighteen thousand dollars. On the last-named day, the board of county commissioners, without authority of law, transferred from the railroad interest and sinking fund to the school fund the surplus then actually in the former fund; and, subsequently, the statute of February 14, 1879, was passed, as claimed by respondents, for the purpose of legalizing this transfer, and not for the purpose, or with the intention, of making it the duty of said board to transfer any moneys which might thereafter come into the railroad fund.

In this connection it must be remembered that the money in question was legally due at the time the statute of 1879 was passed; that the tax of fifty cents upon each one hundred dollars of taxable property in the county was levied for the benefit of the railroad interest and sinking fund alone; and that, under the statute of 1869, it was the duty of the county treasurer to place the proceeds of this tax in the railroad fund, notwithstanding there was no indebtedness existing against that fund.

Respondent justifies its refusal to transfer the money in question to the school fund on the ground: 1. That the statute of February 14, 1879, is contrary to the provisions of section 17, article IV., of the constitution of this state, which provides that "each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title."

The subject of the statute in question is the transfer of surplus moneys from one fund to another—from the railroad interest and sinking fund to the school fund, and from the court-house bond fund to the general fund. It cannot be claimed that it embraces more than one subject, simply because it authorizes and directs the transfer of moneys from two different funds.

" An act concerning crimes and punishments " is not unconstitutional, for the reason that it treats of different crimes. (*State* v. *Davis*, 14 Nev. 443.)

In that case we said : " Escape, larceny, robbery and murder are different crimes, but they are upon the same subject, viz.: *crimes.*"

Nothing is contained in the statute under consideration which is not suggested by the title, and it embraces but one subject and matter properly connected therewith. (*State* v. *Davis*, *supra.*, and authorities there cited; *State* v. *Ah Sam*, 15 Nev. 29; Sedgwick on the construction of statutory and constitutional law, 520.)

2. It is said that this statute only authorizes the transfer of moneys which were in the railroad interest and sinking fund at the time of its passage.

The language of the statute is certainly broad enough to include not only the money that was actually in the railroad fund at the time of its passage, but also that which, afterwards, was lawfully placed therein by the county treasurer.

There is now money in that fund, and under the statute it is the official duty of the board of county commissioners to transfer it to the school fund, unless it plainly appears that the legislative intent was to have the statute apply solely to the moneys in the fund at the time of its passage.

If such was the intent it should have been plainly declared. The authority and direction to make the transfer should have been limited to the money then in the hands of the treasurer.

It was evidently the object of the legislature to give the school fund the benefit of all surplus money remaining in the railroad interest and sinking fund. At the time the statute was passed the money in controversy was due to the last-named fund, and we think the legislature intended to transfer that, as well as the amount then actually in the treasurer's hands. To arrive at any other conclusion we must incorporate into the law a limitation, which the legislature did not see fit to include, and the result would be judicial legislation.

3. It is claimed that the statute of 1879 was repealed by implication by a statute passed in 1881, entitled "An act to

authorize the county commissioners in the several counties in this state to loan or transfer surplus money from one fund to another," which reads as follows :

"The county commissioners in the several counties in this state are hereby authorized and empowered to loan or transfer any surplus money which may be in any of the county funds of the respective counties, from one or more of said funds to the other, and *transfer the same back to the fund or funds from which said surplus money was taken*, at such times and in such manner as in the judgment of said commissioners the best interests of the county may require." (Stat. 1881, p. 32.)

The intention of the legislature in passing this statute was to permit commissioners to make a *temporary* use of surplus moneys in one fund by applying them to the payment of claims against another, containing an amount insufficient to satisfy the demands against it. But although it permits such temporary transfer, it also requires a re-transfer of any sum so taken, while the statute of 1879 authorizes and directs a *permanent* transfer of all surplus money remaining in the railroad interest and sinking fund to the school fund. So it is evident that the statute of 1881 was not intended to be a substitute for that of 1879, and the former cannot be held to operate as a repeal of the latter.

We think it is the official duty of the board of county commissioners of Storey county to transfer the surplus money now remaining in the railroad interest and sinking fund of said county, to-wit: the sum of eighteen thousand six hundred and seven dollars and fifty-two cents, to the school fund of said county; and it is ordered that a peremptory writ of mandamus immediately issue, commanding respondent to make such transfer forthwith.