STATE of Missouri, Respondent,

v.

Norman L. SLICKER, Appellant.

No. 48367.

Supreme Court of Missouri,

Division No. 2.

Feb. 13, 1961.

the defendant was received by the prosecuting attorney.

No attorney for appellant.

John M. Dalton, Atty. Gen., Robert T. Donnelly, Sp. Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

A jury found the defendant guilty of escaping jail before conviction, § 557.390, RSMo 1949, V.A.M.S., and assessed his punishment at imprisonment in the state penitentiary for a term of two years. After the defendant's motion for new trial was overruled, he was sentenced in accordance with the verdict. In due course he appealed from the judgment of conviction.

No brief has been filed by the defendant and the case is before us on the transcript of the record and the brief of the state. In this situation our review extends to the assignments of error properly preserved in the motion for new trial and the essential portions of the record. Supreme Court Rules 27.20 and 28.02, V.A.M.R.; State v. Archer, Mo., 328 S.W. 2d 661, 663 [1]. A liberal construction of the motion permits a review of alleged errors in the admission of evidence, the refusal of the court to allow the defendant sufficient time in which to procure witnesses and the failure to provide the defendant with adequate counsel.

The record shows that the defendant refused the appointment of counsel and chose to represent himself. At a hearing on March 14, 1960, in open court, the court advised the defendant of the nature of the charge against him and that on a plea of guilty or conviction by a jury he might be sentenced to the penitentiary. At that time the defendant told the court his attorney was Mr. Robert E. Yocum. On March 17 a letter from Mr. Yocum stating that he had not been employed to represent

On March 21, 1960, the court appointed Mr. Bradford, a leading member of the Phelps County Bar and a lawyer with many years of experience, to represent the defendant. After conferring with Mr. Bradford, the defendant informed the court he did not care to have Mr. Bradford represent him and that he would like to represent himself. There followed a discourse between the court, the defendant, and Mr. Bradford, the report of which occupies ten pages of the transcript. Mr. Bradford told the court that the defendant had the idea that he could build a defense around "the conditions of the jail" and that he was insisting on bringing prisoners back from the penitentiary to testify, but that he, Mr. Bradford, had advised the defendant that the proposed proof did not constitute a legal defense to breaking jail. The court told the defendant that it was best to have a lawyer represent him and that he should follow the advice of his lawyer. This the defendant refused to do as shown by this excerpt:

"The Court: You—you won't follow the advice of the lawyer?

"The Defendant: Not when it endangers the defense that I believe that could get me off with less than two years on this charge."

The court told the defendant that he could not expect a reputable lawyer to subpoena witnesses which could not give material testimony. The court again advised the defendant of the nature of the charge against him and the possible punishment upon conviction. The defendant said that he understood this and admitted that he had had considerable experience in courts. Again at the conclusion of the hearing the defendant declined Mr. Bradford's services and waived the appointment of an attorney. The defendant was 27 years of age at the time. The court entered a finding that the defendant was mentally able and sufficiently informed to decide his need for counsel and

that the failure to appoint counsel would not result in injustice to him. The court then set the case for trial on April 1st and informed the defendant that he would be expected to go to trial on that date.

The defendant alleges that "counsel was inadequate due to the fact he had no knowledge of the case previous to his appearance in court on the date of the trial". This assertion is wholly at variance with the facts shown by the record. When the defendant defaulted in obtaining counsel of his own choosing, after having been given an opportunity to do so, the court appointed able and experienced counsel to conduct the defense in full compliance with Art. I, § 18, of the Constitution of Missouri, V.A.M.S., § 545.820, RSMo 1949, V.A.M.S., and Supreme Court Rule 29.01. The defendant declined to accept the services of the counsel so appointed and elected to conduct his own defense. The court's finding that the defendant was mentally able and sufficiently informed to decide his need for counsel is well supported by the record. In these circumstances the defendant was entitled to represent himself and the court cannot be convicted of error in permitting him to do so. State v. Glenn, Mo., 317 S.W.2d 403, 407 [3]; State v. Warren, Mo., 321 S.W.2d 705, 709; State v. Thompson, Mo., 324 S.W.2d 133, 139.

The state's evidence tended to prove that a criminal case charging the defendant with stealing a motor vehicle in Texas County was sent to Phelps County on change of venue; that the sheriff of Texas County delivered the defendant to the sheriff of Phelps County and the defendant was committed to the Phelps County jail awaiting trial; that on June 28, 1959, it was discovered that a hole had been dug through the wall of the county jail and that the defendant had escaped during the night-time; that the jail had been properly secured and the doors locked and that the lock had been sawed from the cell in which the defendant was confined. The defendant was apprehended in Denver, Colorado, and returned to Phelps County. The defendant's cross-examination of the sheriff of Phelps County was concluded as follows:

"Q. Did you receive any—did you receive any orders by any office claiming that the County Jail in which you had this prisoner incarcerated wasn't to the standards of the State Board of Health's rules and regulations? A. Oh, I've had them; yeah.

"Q. Could you state what them orders consisted of? A. Just said our jail was old, needed some repairs.

"Q. Well, would you consider that your jail, by the standards of the State Board of Health, is to the protection of the prisoner and to his safekeeping? A. I'd think so; yes.

"Q. Has the State Board of Health observed your jail lately— A. Yeah.

"Q. —in an inspection? A. They sure have.

"Q. Did they think that it was up to standard par that a prisoner's health would not be impaired by it? A. No, they never."

The defendant rested his case without taking the stand himself or offering any evidence in his behalf. The prosecuting attorney made no objection to any question propounded by the defendant. The case was submitted to the jury without argument by the prosecuting attorney or by the defendant. All the evidence tended to support the verdict and it was sufficient.

The defendant contends that the court erred in allowing the prosecuting attorney to read in evidence documents pertaining to another case which documents "had no connection or significance in the trial". These documents were the complaint filed in Texas County, the warrant for the defendant's arrest, the information charging him with stealing a motor vehicle, and the papers and certification showing that the motor vehicle theft case was transferred to Phelps County on change of venue

and that the defendant was ordered transferred to the custody of the sheriff of Phelps County. The state's proof was that the defendant was in the Phelps County jail pursuant to these documents at the time he escaped. In the trial of a case for escaping jail before conviction, it is proper for the state to show the basis for the defendant's commitment to jail and the process under which it took place. State v. Whalen, 98 Mo. 222, 11 S.W. 576, 577. The documents offered by the state and received in evidence were competent and relevant for that purpose and the court did not err in admitting them. The defendant also asserts generally that the court erred in excluding evidence, but the record discloses no basis for this charge. All of the evidence offered was admitted.

■ Next the defendant asserts that the court did not allow him sufficient time in which to produce witnesses in his behalf. At the beginning of the trial on April 1, 1960, the court again advised the defendant of the charge against him and the extent of punishment that could be assessed in case of conviction. The defendant stated that his plea was not guilty and not guilty by reason of temporary insanity. The court advised the defendant that since he was acting as his own attorney he should bring out in his evidence by the testimony of himself and other witnesses what his condition was. The defendant stated that there was a psychiatrist in Springfield who would be "a willing witness" but that he was out of town and would not be back until Monday and asked if there was any chance of getting the case delayed until Monday. The court advised the defendant that he could not postpone the trial because he had other court engagements on Monday and this was a special setting of the case. The defendant did not answer directly when the court asked if the psychiatrist had examined him but replied that the doctor's testimony would prove that the defendant had "a messed-up disposition." The court stated that since the defendant was representing himself the court would be "pretty liberal

in letting you get in evidence or state what the doctor has told you, if he has told you anything." This appeared to satisfy the defendant and he went to trial without further objection.

The defendant has wholly failed to comply with the requirements of Supreme Court Rule 25.08(b) which specifies the showing that must be made for a continuance on account of the absence of a witness. Among other deficiencies this record does not fully and definitely show the name of the witness and his residence, the probability of procuring his testimony, the materiality of his testimony or that the proof could not be made otherwise, as suggested by the court. The record shows that the court was lenient and patient with the defendant in trying to get him to accept counsel and in granting him time to prepare his defense. No abuse of discretion is shown and the assignment of error is denied. State v. Ash, Mo., 286 S.W.2d 808; State v. Le Beau, Mo., 306 S.W.2d 482.

Finally the defendant's motion for new trial alleges that "the aforesaid court actions infringed petitioner's Constitutional Rights and is contrary to Article I Section 2 and Section 10, of the Constitution to the State of Missouri and therein violates the VI and XIV amendments to the Constitution of the United States of America." The defendant has not pointed out any particular in which he was denied due process of law or in which any other constitutional rights were violated, and we have discovered none. Accordingly the assignment is denied.

We have considered all of the specifications of error contained in the motion for new trial and find them to be without merit. We have also examined the parts of the record and entries designated in Supreme Court Rules 28.02 and 28.08 and find them to be proper in form and free from error. Accordingly the judgment is affirmed.

All concur.