STATE of Missouri, Respondent,

v.

Lester KING, Appellant.

No. 50017.

Supreme Court of Missouri,

Division No. 2.

Nov. 11, 1963.

Rehearing Denied Dec. 9, 1963.

Edgar M. Eagan, Jefferson City, for appellant.

Thomas F. Eagleton, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

In 1955 in Phelps County the appellant Lester King was charged with robbery in the first degree. After a change of venue he was tried in November 1955 in the Circuit Court of Cole County, found guilty and sentenced to 15 years' imprisonment. In February 1962, it was charged in the Circuit Court of Cole County, in a good and sufficient information, that on December 24, 1961, while serving the sentence of 15 years' imprisonment in the penitentiary, Lester King, acting in concert with Rollie Laster (Lassiter), Jacob E. Weinrich and Thomas E. Rea, "did unlawfully and feloniously attempt to escape therefrom and go at large by then and there forcing one John Iven by threats of bodily harm to drive a truck through the Penitentiary yard and attempting to have the said John Iven drive the truck through the Penitentiary gates and outside of the Penitentiary confines, but that the said Lester King failed in his attempt to escape from the Penitentiary, against the peace and dignity of the State." RSMo 1959, Sec. 557.351, V.A.M. S. (Laws Mo.1959, H. B. No. 10; Laws Mo. 1961, p. 331); State v. Johnson, 93 Mo. 317, 6 S.W. 77. Again upon a change of venue to Montgomery County, King was tried on the charge of attempting to escape from the penitentiary, found guilty and sentenced to four years' imprisonment and it is from this sentence and judgment that he appeals.

■ These, in brief, were the circumstances as the jury could reasonably find them: After breakfast on December 24, 1961, John Iven, a custodian-guard, together with an inmate "inside-driver," drove a truck inside the main walls of the penitentiary for the purpose of securing bread and ice to be used in L Hall, a unit outside the prison walls for "honor inmates" about to be released. While the truck was parked at a loading dock, the inmate driver went inside the bakery on his errand leaving Iven alone in the truck. Immediately four prison inmates, King, Lassiter, Weinrich and Rea, approached and "two of them (King was one of these) stood on the side of me and they put 'shiv(e)s,' one on each side of my stomach." They forced Iven into to a toilet to "shake me down" in search of the truck key and a prison-guard whistle. After stripping him of his clothes and not finding the key, Iven said to King, "Well, for your benefit, the inside driver has got the keys." King sent Weinrich for the inmate driver "and he shook him down and found the keys" and then they tied him to water pipes in the toilet. They told Iven to dress again, King "took his blade and put it on me" and after some experimenting and "different procedures" with the truck and being unable to find a way out without being seen "King came around there and he put me under the wheel." The four prison inmates placed themselves in various places on the truck, one got in the breadbox behind the driver's seat, and Lassiter being the smallest got down on the floor board next to Iven with his "shiv" and on King's orders they forced him to start forward toward or "through the gate" in the prison wall to the L Hall yard and then of course through an unlocked gate to the city street. Iven stopped the truck, Lassiter "had the blade on me, and he wanted to know what I was stopping for. I said 'Well, I'll have to tell the man I want through the gate.' And as I told him that, why I just take the keys out, kick the door open and jumped out, and as I went to the tunnel door the guard that was on there, he suspected something wrong, so he let me inside." Iven "telephoned" the control tower and the four prison inmates were returned to cells and identified. This evidence and these circumstances, needless to say, supports the charge and the jury's verdict. 19 Am.Jur. (Escape, Prison Breaking, and Rescue) Sec. 8, p. 364; State v. Slicker, (Mo.) 342 S.W. 2d 946; State v. Baker, 355 Mo. 1048, 199 S.W.2d 393.

■ In proof of King's confinement in the penitentiary the state called Mr. Lamar,

859

for 22 years the superintendent of identification and records. Mr. Lamar identified as one of the records of his office a certified copy of the 1955 sentence and judgment of the Circuit Court of Cole County in King's robbery conviction. This witness also identified King as the person named in the document and as the person on trial for attempted escape. There was objection to this document and to this testimony, and while other and further documentary evidence may have been available this document and testimony were admissible and sufficient for the purpose offered,—to show King's "commitment" (State v. Slicker, supra), or that "he was in lawful custody at the time" of his attempt to escape. State v. Whalen, 98 Mo. 222, 225, 11 S.W. 576, 577.

■ As a matter of fact all these are but preliminary matters necessarily considered by the court upon this appeal. In the trial of his case and here King's principal claim is that his prior robbery conviction was void or unlawful and that therefore he could not be guilty of an escape. He attempted to raise and establish his claim in this manner: After this the escape case was pending in the Circuit Court of Montgomery County, King filed in that court a document which with his assent the court denominated a "Motion for Writ of Habeas Corpus." In that document it was asserted that in violation of the state and federal constitutions he was "being illegally and unlawfully deprived from his liberty" by reason of the sentence and judgment of 15 years' imprisonment and that he was entitled to present witnesses to prove his innocence of the robbery charge in Phelps County. He also alleged that while confined in the penitentiary he had "suffered crual and unusual punishments" (solitary confinement) and should for that reason be discharged from the original sentence and judgment.

■ But whether this unusual document be treated as a petition for habeas corpus (RSMo 1959, Sec. 532.010, V.A.M.S.) or as a motion to vacate the judgment (Sup.Ct.Rule 27.26, V.A.M.R.), the Circuit Court of Montgomery County did not, by the mere filing of the plea, obtain jurisdiction of either the proper persons (39 C.J.S. Habeas Corpus § 54, p. 597) or the subject matter in the first instance. In habeas corpus for an unlawful confinement in the penitentiary the venue is in Cole County. RSMo 1959, Sec. 532.030, V.A.M.S.; 39 C.J.S. Habeas Corpus § 71, p. 617; State ex rel. Gentry v. Westhues, 315 Mo. 672, 286 S.W. 396; State ex rel. Shartel v. Skinker, 324 Mo. 955, 25 S.W.2d 472. And initially a motion to vacate a judgment may only be filed "in the court which imposed such sentence." Sup.Ct.Rule 27.26. As of course an escape presupposes a lawful custody, but a prisoner may not defy his custodian merely because his sentence is irregular or voidable. 30 C.J.S. Escape § 5 a c pp. 1143, 1144. It may be assumed that one charged with an attempt to escape may defend "by showing that he * * * was not 'lawfully' imprisoned at the time of the alleged escape." Annotation 70 A.L.R.2d 1430, 1434; 30 C.J.S. Escape §§ 10, 15, pp. 1147, 1148. Nevertheless, for reasons which need not be repeated here, "(n)ot necessarily inconsistent with the rule that escape is justifiable where the imprisonment is 'unlawful' are a number of cases holding that where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels, even though he might be able to show such defects in the procedure by which he was arrested, tried, sentenced, committed or imprisoned as to justify or require his release on appeal or habeas corpus." 70 A.L.R.2d 1. c. 1437. And an attempt to escape is not justifiable "because the conditions of imprisonment were intolerable or inhumane." 70 A.L.R.2d 1. c. 1433. In this connection, necessarily, the testimony offered by King if admissible at all could only be introduced and employed in an appropriately instituted proceeding in a court with jurisdiction of the proceeding in the first instance.

There is no error "as to those matters upon the record" before the court (Sup.Ct. Rule 28.02) and for the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.