**Billy J. McGINNIS, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55100.**

Supreme Court of Missouri,
Division No. 2.

Dec. 14, 1970.

Roy C. Miller, Marshfield, for appellant.

John C. Danforth, Atty. Gen., James M. Reed, Asst. Atty Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On March 14, 1968, a jury in Webster County found Billy J. McGinnis guilty under an information charging that on January 1, 1967, while under sentence to the State Department of Corrections, he escaped from the Fordland Honor Farm. RSMo 1969, Sec. 557.351. The jury fixed his punishment at three years and six months' imprisonment (the penalty is not more than 5 years nor less than 2), he appealed and the judgment was affirmed in State v. McGinnis, Mo., 441 S.W.2d 715.

In addition to that case, number 54,610 in this court, which includes a full tran-

script of his trial, there are also in this court various and sundry files, habeas corpus proceedings, abortive 27.26 proceedings, bearing these numbers, 52,569, 52,367, 55,848, 55,406 and 55,319. In one or more of these files the court has given McGinnis a special order in connection with his original pleas of guilty to three offenses in Franklin County and pursuant to that order an appeal to this court has been perfected, a transcript and brief filed, that cause bears number 55,406 and will be docketed on the March 1971 docket. The present proceeding, number 55,100 in this court, is an appeal from a denial of his 27.26 motion to vacate the escape charge in Webster County and in effect disposition of this appeal adjudicates and disposes of all his motions, correspondence and other matters insofar as they are concerned with the escape charge and conviction in Webster County. It does not, of course, dispose of his pending appeal of his principal convictions of forgery in Franklin County.

The fact, however, of the pendency of a 27.26 appeal of the collateral attack on his original convictions on the ground of coerced pleas and a claim that his three sentences should have run concurrently rather than consecutively has but little, if any, bearing on the merits of this appeal or on his escape conviction in Webster County. As has been pointed out on numerous occasions escape, qua escape, presupposes "lawful custody" but not necessarily inconsistent with that rule "where the imprisonment is under color of law, the prisoner is not entitled to resort to self-help but must apply for his release through regular legal channels, even though he might be able to show such defects in the procedure by which he was arrested, tried, sentenced, committed, or imprisoned as to justify or require his release on appeal or habeas corpus." Annotation 70 A.L.R.2d 1430 "What justifies escape or attempt to escape, or assistance in that regard." This annotation and the quoted principle have been applied in the following Missouri cases:

State v. King, Mo., 372 S.W.2d 857; State v. Pace, Mo., 402 S.W.2d 351; State v. Hart, Mo., 411 S.W.2d 143; State v. Croney, Mo., 425 S.W.2d 65.

The claim upon this appeal, necessarily the only claim possible, is that appellant McGinnis was denied effective assistance of counsel upon the charge and trial of escape. It is urged that ineffective, inadequate counsel was established in two respects, one, that his lawyer permitted evidence of prior convictions without objection or other appropriate action and, two, permitted improper argument by the state's attorney without objection. At the outset of the trial, after the defendant personally waived arraignment, defendant and his counsel asked for the fixing of bond, because as McGinnis said, "The Supreme Court overruled my other conviction, and I was under an escape order at that time and didn't follow it up." This statement refers no doubt to the special orders by this court in one or more of his various files permitting a hearing and appeal in this and his three other contemporaneous convictions. In any event, thereafter, on March 14, 1968, the date the cause had previously been set for trial at the request of defendant's counsel, there was a discussion in the judge's chambers between McGinnis, the prosecuting attorney, defendant's attorney and the court. In that discussion McGinnis informed the court that "I can't accept Mr. Pope as my counsel. Before I accept him, I would act as my own counsel." He simply said, because his lawyer recommended a plea of guilty as the best way to secure a lighter sentence, "I have no confidence in him at all." He did not complain of the number of times the lawyer had seen him or of the lawyer's lack of preparation or investigation of possible defenses as in Goodwin v. Swenson, D.C., 287 F.Supp. 166. McGinnis said that he had outlined to his lawyer "what your defense is going to be" and he said that his lawyer "didn't directly say for me to plead guilty to the charge, but he suggested it, in a roundabout way."

At this juncture the court inquired whether "the reason you don't want him as your attorney, because, in his opinion, he doesn't feel that the facts given do not constitute a defense to the charge?" McGinnis replied, "I have a bad temper. I can't control it.—I got quite mad, and I took a dislike to the man; not personally, but what he said, the way he said it * * *." He then displayed to the judge what he said was an order of this court of June 5, 1967, along with a copy of an opinion in State v. Stidham, 415 S.W.2d 297, all of which came down while "I was on escape for a year." It developed that all this related to his Franklin County case. His counsel informed the court that he had considered all these matters and papers, including that "He gave me some reasons he thought that he should be acquitted of the crime." But his counsel concluded to the court, "Under the circumstances, I advised Mr. McGinnis that I saw no way in which I could successfully gain an acquittal for him, and discussed with him the possibility of entering a plea, hoping that the Court would give him a sentence which would be less than the maximum." The lawyer suggested a plea of insanity, McGinnis rejected that but as to McGinnis' reasons for an acquittal the lawyer said, "I told him that, in my viewpoint, that this was not a legal defense." In conclusion, despite his client's repudiation and denunciation, the lawyer said, "I am ready and willing to do everything possible to help Mr. McGinnis in Court today, if the Court sees fit, or I will be glad to step aside if the Court sees fit. I only hope that whatever we do, that it will be for his benefit." In the end the court found that "Mr. Pope is an attorney who has practised law several years, and defended a good many cases. I think he is competent to defend your case." And then McGinnis really got to the crux of the matter: "I was asking you, on this hearing, to dismiss the charge; I am asking you now, before you go any farther."

The cause proceeded to trial, the facts as adduced by the state were that McGinnis was under sentence to the Department of Corrections from Franklin County. There were three consecutive sentences of five years on each conviction upon pleas of guilty in 1961. On November 19, 1966, McGinnis was transferred to the Fordland Honor Camp by the Department of Corrections. He was there at 3 o'clock under minimum security on January 1, 1967, but was missing at the 10 o'clock head count. When the guard could not locate McGinnis the fact was reported to the captain of the guard. The premises were searched, there was snow on the ground, tracks to the seven-foot fence, and "Where he went over the fence" to the railroad tracks. On December 28, 1967, a Department of Corrections officer returned McGinnis from Evanston, Wyoming, to the penitentiary in Jefferson City. In these circumstances it is difficult indeed to conceive of a defense to the charge of escape from the honor farm. Nevertheless the record upon his trial for escape reveals that his court-appointed lawyer, James Pope, did everything possible by way of trying the cause and protecting his client's rights. And his argument to the jury is surprisingly ingenious, it may account for the fact that the jury gave McGinnis three and one-half years' imprisonment rather than five years.

The only possibility of an exception would be the claim of counsel's failure to object to the proof of prior convictions. But this argument ignores the essential elements of the substantive offense of *escape*. As indicated at the outset, it was necessary for the state to prove confinement "under color of law" or "lawful imprisonment." To that end the state offered and the court admitted certified copies of the sentences and judgment from Franklin County and these of course showed three felonies, the last of which he was serving at Fordland when by the 10 o'clock count he had vanished. The prison records, fingerprints, photographs, work detail and other records identified McGinnis as the person committed and

confined and as the defendant on trial. These records, incidentally showed a prior conviction in California. As was said in two other cases: "There was objection to this document and to this testimony, and while other and further documentary evidence may have been available this document and testimony were admissible and sufficient for the purpose offered,—to show King's 'commitment' (State v. Slicker, Mo., 342 S.W.2d 946) or that 'he was in lawful custody at the time' of his attempt to escape." State v. King, Mo., 372 S.W.2d 857, 859 and State v. Martin, Mo., 395 S.W.2d 97, 101, in which the relevant cases are collected. In view of the essential nature of the charge of escape the appeal bears no relationship to those instances in which other offenses attacking "character" are erroneously admitted, State v. Jones, 306 Mo. 437, 268 S.W. 83 and State v. Mobley, Mo., 369 S.W.2d 576. As demonstrating that in no event would this evidence or the prosecuting attorney's argument and Mr. Pope's failure to object to it constitute prejudicial error are these additional circumstances: Immediately after the noted conference in the judge's chambers the parties all returned to the courtroom and in the jury's presence and hearing McGinnis had a "temper tantrum," knocked papers and documents off the counsel table, attempted to walk out, hurled obscenities at the court (for which he eventually apologized) and finally said, "I have rotted in jail for twelve years, Mister." Even then his lawyer moved for a mistrial. In view of this outburst it is difficult to conceive of unfair prejudice by reason of his lawyer's failure to object to the admission of proof of other offenses or the prosecutor's argument.

McGinnis attempted to sustain his 27.-26 proceeding and claim of ineffective counsel by introducing eleven excerpts or quotations from the transcripts of the record in his original escape trial. Aside from the fact that some of these are excerpted out of context or in any event were not inadmissible or improper or prejudicial, there was no other proof or offer of proof and upon this proof and the original transcript the court again found "that the counsel appointed for movant was an experienced and competent attorney who ably represented Movant under most difficult circumstances * * * (and) the strategy employed by the attorney for movant was reasonable and proper under the circumstances" and, consequently, that there was no denial or infringement of constitutional rights. The record relied on by the appellant does not of itself establish ineffective counsel, the trial court's finding to the contrary is not clearly erroneous—it is supported by the record and accordingly the judgment is affirmed. Williams v. State, Mo., 460 S.W.2d 688 and cases there cited.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.