288 So.2d 712 (1974)
Larry G. MATTHEWS and Sammy Ray Oliver
v.
STATE of Mississippi.
No. 47581.
Supreme Court of Mississippi.
January 7, 1974.
*713 Holcomb, Dunbar, Connell & Merkel, Clarksdale, for appellants.
A.F. Summer, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
The appellants, Larry G. Matthews and Sammy Ray Oliver, were indicted, tried and convicted of the crime of escape from the Mississippi State Penitentiary at Parchman, Mississippi, and were each sentenced to serve a term of five (5) additional years in the prison.
It is not necessary to detail the facts of the escape, except to say that the escape was accomplished by the use of a firearm. The defendants admitted that they were lawfully incarcerated in the penitentiary and did not deny that they accomplished their escape in the manner detailed by the state witnesses. They each contended, however, that it was necessary for them to escape because their lives had been threatened by the sergeant of the first offender camp. The appellants offered in defense of the charge testimony that Tom Bennett, the sergeant, confronted David Purdy concerning a petition which had been circulated by Purdy and Matthews with reference to food and canteen privileges. Immediately thereafter, one Sam Brown, Jr. asked Bennett what Purdy had done wrong, and Bennett responded by pulling a knife from his pocket and stating, "... son of a bitch, I could kill him  no I couldn't kill him, but I dam sure could make him wish he was dead." Sometime later Sergeant Tom Bennett is said to have approached Sammy Ray Oliver and engaged in a conversation with reference to the petition previously mentioned. He advised Oliver that "the petition was drew up" by Purdy and Matthews and inquired whether or not Oliver knew them. Oliver informed the sergeant that he did. The sergeant then said, "I don't want you to do this tonight now because the National Guard is here, ... but tomorrow night after the lights go out in the cage and everybody goes to bed, ... I want you to get them two out of there, make it look like they was escaping and kill them  kill them both  cover it up like they were attempting to escape."
It is said that the sergeant said if he did not do it, he would get somebody else to do the job and would include Oliver with the others. The foregoing testimony was offered *714 in the absence of the jury. The trial judge refused to permit the evidence to be given to the jury. The appellants now contend on appeal that this evidence should have been submitted to the jury as a defense to the charge of escape, because it is said they acted through necessity.
There is a scarcity of authorities on the issue of "escape because of necessity." Very few text writers have noticed this court-made doctrine. There is, however, a collection of cases compiled on this subject at Annot., 70 A.L.R.2d 1430 (1960). The source of the rule is not made clear. One of the early cases has this to say: "If a prison be fired by accident, and there be a necessity to break prison to save his life, this excuseth the felony." 1 Hale P.C. p. 611 quoted from 21 C.J. Escape § 20, Note 40 at 833 (1920).
On the other hand, the intent to escape is not negated because of the unsanitary condition of the prison [State v. Davis, 14 Nev. 439, 33 Am.St.Rep. 563 (1880)]; nor because conditions of the prison are intolerable or inhumane [State v. King, 372 S.W.2d 857 (Mo. 1963)]; nor because of fear of violence from third persons [Hinkle v. Commonwealth, 23 Ky. Law.Rep. 1988, 66 S.W. 812 (1902)].
Moreover, since the doctrine of escape because of necessity is based upon intent  that is to say, whether or not the prisoner intended to escape lawful imprisonment, or intended to escape an impending danger  the failure of a prisoner to immediately return to lawful custody after the impending danger has been avoided, is within itself an escape and prevents a defense of escape because of necessity.
Prisoners who are being threatened should not take the law into their hands, but should communicate their fears to the prison superintendent, who in turn should keep the lines of communication open to receive such information.
In the instant case the prisoners not only made their immediate escape from the alleged impending danger, but they continued to flee farther away from the place of their lawful confinement. Moreover, they made their escape by the use of a firearm and violence.
The trial judge was correct in his ruling that the evidence of an alleged threat to take the life of the prisoners under the circumstances here shown was not a defense to the charge of escape from prison.
Affirmed.
PATTERSON, INZER, SUGG and WALKER, JJ., concur.