STATE of Missouri, Respondent,

v.

James COX, alias John Cox, alias Sonny Man, and Robert Williams, alias Little Robert, Appellants.

Nos. 48543, 48542.

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1961.

Rehearing Denied Jan. 8, 1962.

Raymond A. Bruntrager, St. Louis, for appellant Robert Williams.

Morris A. Shenker, Murry L. Randall, Lawrence J. Lee, St. Louis, for appellant Cox.

Thomas F. Eagleton, Atty. Gen., Dale Reesman, Sp. Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

Under a charge of murder in the first degree, the defendants were convicted of second degree murder. The jury assessed the punishment of the defendant Robert Williams at fifteen years in the penitentiary. The court found that the defendant James Cox had previously been convicted of a felony in the State of Missouri and assessed his punishment at imprisonment for a term of twenty years. Both defendants were represented by counsel of their own choosing at all proceedings in the trial court.

On appeal the defendant Cox is represented by counsel and has filed a brief. Since the defendant Williams has not filed an appellate brief, the review of his conviction will be upon the assignments of error properly preserved in his motion for a new trial and the essential portions of the record. S.Ct. Rules 27.20 and 28.02, V.A.M.R.; State v. Slicker, Mo., 342 S.W. 2d 946, 947 [1]. The questions preserved for review by both defendants relate primarily to the correctness of the trial court's rulings in the giving of instructions, the admission of evidence and the state's argument to the jury.

The essential facts take a rather narrow range and the parties are in general agreement as to what the evidence tended to prove. At approximately 10 p. m. on November 19, 1959, Donnell Stewart was shot and killed in front of 2714 Cole Street in St. Louis, Missouri. His death resulted from a single bullet which passed through his body from front to rear piercing his heart. The principal actors in this tragedy were better known by their nicknames: Donnell Stewart, the deceased, was known as "Duck"; the defendant Cox as "Sonny Man"; and the defendant Williams as "Little Robert". Elliot Street runs north and south; the 900 block is only 232 feet long from curb to curb and does not run through, being bounded on the north by Cole Street and on the south by Franklin, both of which are east and west streets. A poolhall, located at 913 Elliot, is on the west side of the street. Seventy-three feet north of the door of the poolhall is a narrow one-vehicle alley which extends west of Elliot Street about 120 feet to a point where it makes a right-angle turn north into Cole Street. 2714 Cole Street, in front of which the killing occurred, is just east of the Cole Street entrance to the alley. On the south side of Cole Street from the alley to Elliot is a solid row-type residence building.

The only eyewitness to the shooting who testified was Mrs. Jo Ann Lewis, the eighteen-year-old girl friend of Donnell "Duck" Stewart. She had been living with him at his father's home for three or four months. On November 19, 1959, she worked for her sister as a baby sitter and Stewart spent the day with her. Mrs. Lewis testified substantially as follows: At about 6 p. m. on that day, a colored man named James, whom she had not known previously, picked her and Stewart up in an automobile and drove them to Cole and Leffingwell where they got out, intending to go to a movie in the 2700 block of Franklin about two blocks away. Mrs Lewis and Stewart walked east on Cole to Elliot, then south on Elliot. As they approached the poolhall, defendant "Little Robert" Williams was standing in the doorway and the defendant "Sonny Man" Cox was crossing Elliot Street from east to west carrying a gun in his hand. The defendant Cox approached Stewart saying he wanted to talk to him, and Stewart told Cox that he also wanted to talk to him. Stewart and Cox stood near the curb in front of the poolhall talking for about five minutes. Mrs. Lewis stood nearby but did not hear what was said. Part of the time she kept her hand in her coat pocket but neither she nor Stewart had a gun. Williams walked south toward Franklin. Stewart and Cox walked north on Elliot to Cole, then west on Cole and stopped in front of 2714 near a street light about an arm's length from each other. Mrs. Lewis followed them at a short distance and ascended to about the third of the four doorsteps leading to the entrance of 2714 Cole. She never at any time heard what Stewart and Cox said to each other. The defendant Cox continued to hold the gun in his hand. The defendant Williams approached on Cole Street from the east carrying a gun and fired a shot at her as she stood on the steps near the doorway causing her to fall, although she was not hit by the bullet. Immediately after defendant Williams shot at her and while she was lying on the step, the defendant Cox stepped back and shot Stewart. Mrs. Lewis further testified that she then ran into the alley followed by Williams who fired an-

other shot and she fell against a post in the alley, but the bullet did not strike her. Williams overtook her, fired again and again missed her. He then struck her on the head with the gun. At this juncture defendant Cox entered the alley from Cole Street, came up to where defendant Williams was standing over her and said, "Let's go, Little Robert, Duck is dead." With that both Cox and Williams broke and ran out of the alley toward Elliot. Mrs. Lewis ran into Cole Street, looked at Stewart, then ran west to Leffingwell and called police officers.

At about 11 o'clock on the night of the shooting defendant Williams surrendered to the police and turned over to them an automatic pistol. In one of the yards adjoining the alley police officers found a nickle plated revolver and in the alley two spent shells and a bullet fired from Williams' automatic. A statement taken from Williams and a transcript of his testimony given in an assault trial on May 25, 1960, were admitted in evidence against the defendant Williams only.

The facts related by Williams on each occasion were generally the same and substantially as follows: Williams went to the poolhall at about 5:45 on that night of November 19, 1959, taking his gun with him. He hid the gun under some lumber in a yard about 25 feet from the poolroom where it remained until he retrieved it before going to Cole Street as hereinafter stated. At about 6:30 Williams was standing in the doorway of the poolroom when, according to his statement, this occurred: "Duck Stewart and a girl whose name I don't know came up to this poolroom and asked me had I saw Sonny Man. I looked up and saw Sonny Man coming across the street and I said to Duck and the girl, 'Here he comes now.' Sonny Man said to Duck, 'Get your hands out of your pocket.' Duck said something that I couldn't hear. Both Duck and Sonny Man pulled pistols and the girl had her hands in her coat pockets. Then Sonny Man and Duck started arguing and I walked up to them. Sonny Man told me to go back and Duck said, 'He is not going to do anything.' The girl said, 'If he do, I will shoot him and anybody that moves.' I moved back. Then they walked up the street and around the corner of Cole and Elliot and I waited until they got around the corner and ran up to them, I yelled, 'Hold it, Duck, it don't make sense.' Then the girl yelled, 'Duck, he has got a pistol,' and he fired. When he fired, I fired one and I hit him and he fell. I aimed the pistol at the girl on the steps and tried to fire it but it didn't fire. She ran down the alley and I ran behind her and shot at her one or two times. She fell against a fence and a post and threw her hands up from her pockets and I hit her on the head with the pistol. Sonny Man then ran up through the alley and said, 'Come on, let's go.' We both ran down the alley to Jefferson and Cole and then we split up. I went home then." Williams took his gun with him but later called the police and gave it to them when he was arrested. Williams' testimony at the assault trial was more detailed and he testified additionally that the gun which Stewart had was a nickle plated one; that he did not see Cox fire a shot; and that he, Williams, fired at Stewart because he was scared.

The first assignment of defendant Cox is that the trial court erred in giving and reading to the jury Instructions Nos. 1, 2, and 3, which allowed the jury to convict him as an "aider and abetter" acting jointly or in concert with co-defendant Williams for the reason there was no evidence admitted against Cox to support a finding that he was an aider and abetter of co-defendant Williams in the killing of the deceased Stewart. This is followed by the further assignment that the court erred in refusing to give an instruction on circumstantial evidence for the reason that all the evidence, if any, tending to show aiding and abetting was circumstantial evidence. With slight variations, the defendant Williams raises similar questions.

■■ Was there direct evidence apart from the statements of the defendant Williams from which the jury could reasonably find that Cox aided and abetted the commission of the offense? We are convinced there was. The distinction between direct and circumstantial evidence is well stated in State v. Famber, 358 Mo. 288, 214 S.W.2d 40, 43, as follows: "Direct evidence is said to be 'evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.'" See also State v. Varnon, Mo., 174 S.W.2d 146, 147 [2], and State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, 704 [1–3].

There was direct evidence of acts and declarations by the defendant Cox from which the jury could find that he aided and abetted the defendant Williams. Jo Ann Lewis testified as to the conduct of the parties on Elliot Street in the vicinity of the poolroom, described how they proceeded to the mouth of the alley on Cole Street, and gave her version of the shooting. If this were all, the question might be more difficult. But the witness then testified that after she ran into the alley pursued by Williams, the defendant Cox also came into the alley, told Williams "Duck is dead, come on let's go", and they both ran off together. Even though the jury believed it was a bullet from the gun of Williams that killed Stewart, the jury could reasonably find, solely from the acts and declarations of Cox, that Cox was an aider and abetter. This proof was direct and not circumstantial. If the defendants were not partners in the crime, there would have been no occasion for Cox to follow Williams into the alley and impart the information that Duck was dead and then for both of them to flee from the scene of the crime together. From direct evidence of the acts and declarations of each defendant, independently of the other, the jury could have reasonably found that either of them fired the fatal shot and that the other aided and abetted. The contention that Instructions Nos. 1, 2 and 3 were erroneous because there was no evidence to support a finding of aiding and abetting is denied.

■ In support of the contention that the court erred in refusing to give an instruction on circumstantial evidence, the appellant Cox cites cases in which there was no direct evidence of the defendant's guilt. As we have previously held, there was direct evidence from which the jury could find against both defendants on the theory that either one of them fired the fatal shot and the other aided and abetted. Error cannot be predicated upon a failure to give an instruction on circumstantial evidence unless evidence of that character is solely relied upon for conviction. State v. Burns, Mo., 328 S.W.2d 711, 713 [4]; State v. Tolias, Mo., 326 S.W.2d 329, 337 [20]; State v. Morris, Mo., 307 S.W.2d 667, 675 [11]. The assignment is denied.

■ At the time the statement of Williams and his testimony at another trial were admitted in evidence, the court orally instructed the jury that these admissions were not binding on the defendant Cox and were not to be taken as evidence against him. No further instruction in this regard was requested and there was no objection to the instructions in this respect by either defendant. In these circumstances the defendants are not in a position to urge that a written instruction should also have been given.

■ The defendants' assertion that the court erred in failing to instruct the jury that one defendant could be convicted and the other acquitted is contrary to the facts shown by the transcript of the record. The instructions permitted the jury to find the defendants or either of them guilty or not guilty of the offense submitted. For this reason, the contentions must be disregarded.

■ Both defendants have assigned error by reason of the failure of the trial

court to declare a mistrial because of allegedly improper, inflammatory and prejudicial argument to the jury on the part of the state. The complaints of the defendants in this regard overlap and will be treated together. At the beginning of his closing argument, the prosecutor stated "the evidence shows that there were at least three guns out there on that day. Here are two guns here, where is the other gun?" The defendants objected and moved for a mistrial on the ground that the statement was a comment by the state on the failure of the defendants to testify. The court did not err in overruling the objection and denying the motion for mistrial. Section 546.270, RSMo 1959, V.A.M.S., provides that a defendant's failure to testify shall not "be referred to by any attorney in the case." In order to constitute a violation of the statutory prohibition, it must be demonstrated that the statement of counsel directly or indirectly called the jury's attention to the fact the accused did not testify. State v. Hayzlett, Mo., 265 S.W.2d 321, 323 [3, 4]. In that case, counsel's statement that the defense had offered no testimony at all was held not to violate the statute. The purpose of the statute is to prohibit counsel from making capital out of an accused's exercise of his constitutional right to remain silent. It does not appear that such was the purpose or the result of the argument made on this occasion. The assignment is denied.

There are approximately eight specifications of error concerning references in the state's argument to such subject matters as civic interest and the personal safety of inhabitants of the city. Typical of these and sufficient to demonstrate their nature is the following: "If you want that kind of community, if you want the kind of community where people are going to stand on corners and shoot back and forth at one another, return a verdict that is light, return a verdict that is easy, tap him on the wrist and say, 'You have been a naughty boy, you killed somebody this time. Don't do it any more.' * * * he took

this nasty looking weapon here and carried it up the street and fired that shot in the middle of that public street out there with an utter disregard for anybody walking by, standing on the sidewalk, leaning out the window—".

■ A prosecutor has a right to call attention in argument to the prevalence of crime in the community, to urge the jury to do its duty to uphold the law, and to draw inferences therefrom as to the effect of a failure to uphold the laws. State v. Marshall, 317 Mo. 413, 297 S.W. 63, 69 [20]. The prosecutor is generally permitted considerable latitude in arguing the necessity of law enforcement and the responsibility resting upon trial juries. State v. King, Mo., 334 S.W.2d 34, 40 [10]. Calling attention to the fact that the shooting occurred on a public street in a large city, that the defendants placed in jeopardy all who used the streets and that in so doing they were a menace to the community was not improper as an appeal to the fears of the jury. State v. Benjamin, Mo., 309 S.W.2d 602, 606 [5]. Whether or not remarks of counsel are improper and prejudicial under the facts of a particular case are matters largely within the trial court's discretion and will not be interfered with unless abused to the defendant's prejudice. State v. Green, Mo., 292 S.W.2d 283, 288 [10].

■ In three instances objections were made on the ground that the prosecutor was referring to matters within his own belief and not in evidence. Two objections were based on the contention that there was no evidence of a common purpose. Our examination of the record discloses that the evidence justified the argument and it would be a distortion of the language used to hold that the statements were an expression of the prosecutor's personal opinion of the guilt of the defendants. Objections were also made to the prosecutor's references to the defendants' pleas of not guilty and their reliance on the defenses of self defense which were matters argued by their counsel. These statements were

closely related to the prosecutor's assertion that all defendants were entitled to a fair trial and cannot be said to be improper statements of the law, nor otherwise improper. All of these assignments of error based on the prosecutor's jury argument are denied.

During the closing argument of the state, defendants' counsel made frequent objections, some of which were anticipatory. At one point one of defendants' counsel interrupted the prosecutor in the middle of a sentence with the statement, "This is highly prejudicial." During the colloquy that followed, the court made these statements: "He is just making a statement, the objection is not proper; I will overrule the objection. * * * You don't even let the man make a statement. * * * It appears to the court now that the attorneys are making objections for the mere purpose of interrupting the attorney for the State. Go ahead." Out of the hearing of the jury, defendants' counsel objected "to the remarks of the Court in passing upon the defendant's objection for the reason that said remarks tend to disparage counsel, they tend to reflect the Court's feeling towards the argument that the State is making, it lends in my mind approval by the Court of the prosecutor's argument * * *." Defendants' counsel had made a great many objections some of which were sustained. Some of the remarks of defendants' counsel were not addressed to the court in the form of objections, but were retaliatory of something said by state's counsel in argument. A trial judge is charged with maintaining orderly procedure in his courtroom. If the court became impatient with counsel, it was mildly so. Taken in context we find nothing in the court's remarks tending to approve the state's argument or indicating a belief in the defendants' guilt. The court did not err in overruling the objection and motion for a mistrial. State v. Barnholtz, Mo., 287 S.W.2d 808, 812 [4, 5].

The foregoing has disposed of all questions properly presented by the defendant Cox, some of which were raised in common with the defendant Williams. The rest of the opinion will be concerned with additional specifications of error properly preserved in Williams' motion for new trial. Prior to the trial the defendants filed joint motions for a bill of particulars, for a psychiatric examination of the witness Jo Ann Lewis, and for requiring the state to answer written interrogatories submitted by the defendants. These motions were heard and submitted without the taking of evidence and were overruled. The ruling is assigned as error.

Generally, a bill of particulars may be required where it is necessary to enable the defendant to prepare adequately for trial or where it is necessary to constitute a bar to a subsequent prosecution. S.Ct. Rule 24.03. The motion for a bill of particulars is addressed to the sound discretion of the trial court and its ruling thereon should not be disturbed in the absence of an abuse of such discretion. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545. No abuse of discretion appears on the record.

The motion for a psychiatric examination alleged that the defendants were informed that Jo Ann Lewis had been confined in the psychiatric ward of City Hospital and was known to be addicted to the use of narcotic drugs and that the defendants believed that she was of unsound mind. The allegations of the motion did not prove themselves and no evidence was offered in support of them. It is the court's province to pass on the competency of witnesses. State v. Stidham, Mo., 305 S.W.2d 7, 13[7]. No objection was made at the trial to the witness' competency. The witness was prima facie competent and the court did not err in overruling the motion for a psychiatric examination. State v. Oswald, Mo., 306 S.W.2d 559, 563[9]; State v. Brown, 360 Mo. 104, 227

S.W.2d 646, 649[2]; State v. Wilson, 361 Mo. 78, 233 S.W.2d 686, 688[9].

 A defendant is entitled to take the depositions of witnesses in a criminal case, S.Ct. Rules 25.10 and 25.11, but there is no provision to compel the state to answer written interrogatories. The interrogatories submitted were similar in form to those permitted in civil cases. See S.Ct. Rule 56.01 and § 510.020, RSMo 1959, V.A. M.S. There were 25 in number and called for details of evidence and conclusions. But apart from their character we know of no authority permitting a defendant in a criminal case to require the state to answer interrogatories such as were submitted here and none has been cited. The court did not err in denying the request for answers to the interrogatories.

 The court denied the request of the defendants to cross-examine Jo Ann Lewis as to whether she was a prostitute, her reputation as such, and if she earned her living by immoral means for the purpose of impeaching her as a witness. The court was correct in so ruling. The credibility of a witness in a criminal case cannot be impeached by showing that his reputation for morality is bad, but such an attack must be addressed directly to his reputation for truth and veracity. State v. Kain, Mo., 330 S.W.2d 842, 845[3].

 Three related specifications of error are that for the purpose of impeaching her credibility as a witness the defendants had the right to cross-examine Jo Ann Lewis as to her being a drug addict, whether she was under the influence of drugs the night of the killing, and also at the time she was testifying. The testimony of the witness extends over 94 pages of the transcript of which 80 pages were given to cross-examination. There is nothing in the record that tends to demonstrate that there was any substance to the contention that the witness was then or had been under the influence of drugs. The extent of cross-examination on collateral matters for the

purpose of impeachment is largely within the trial court's discretion and no abuse of such discretion has been made apparent in this instance. State v. Brotherton, Mo., 266 S.W.2d 712, 714[2, 3]; State v. Allen, Mo., 343 S.W.2d 63, 66–67[6, 7]; State v. Stidham, Mo., 305 S.W.2d 7, 12–13[6, 7].

 Shortly after the killing, police officers searched the vicinity and in the rear yard of 2714 Elliot, which adjoined the alley, they found a nickel plated .38 caliber revolver loaded with five rounds of live ammunition and one expended shell. The revolver was identified and introduced in evidence over defendants' objection as state's Exhibit 9, and the ammunition and expended shell as Exhibit 10. Defendant Williams' specification of error is that the exhibits were found at a place remote from the scene of the crime and were not connected with him in any way. By their cross-examinations, the defendants sought to establish that the "shiny revolver" must have belonged to Duck Stewart and had been thrown in the yard by Jo Ann Lewis since she testified Sonny Man's gun was a dark one. The place where the gun was found was not remote from the scene of the crime. It could not have been much in excess of a hundred feet from where Duck was killed and immediately adjoined the alley into which the defendants and Mrs. Lewis went after the street shooting. Since the evidence was sufficient to show a common purpose on the part of the defendants, the exhibits were admissible; their weight and value as evidence were for the jury.

 The defendant Williams assigns error in the admission of his written statement given to the police, Exhibit 19, because it was contrary to the state's theory that Sonny Man Cox fired the bullet that killed Duck Stewart and, further, that it contained statements tending to exculpate Williams. The state of the evidence was such that the jury could find that either of the defendants fired the fatal shot and that the other aided and abetted so the exhibit was not in conflict with the state's theory.

The exhibit is not rendered inadmissible because it contains exculpatory statements, because the jury may believe or disbelieve and reject these parts just as it may evaluate other parts of the statement in connection with all the evidence in the case. State v. Bridges, Mo., 349 S.W.2d 214, 216 [2]; State v. McCloud, Mo., 328 S.W.2d 586, 588[2]; State v. Tourville, Mo., 295 S.W.2d 1, 5[4].

■ At the conclusion of the testimony of a police officer, defendants' counsel requested that the witness be directed to remain available, and the court so ruled, but during the discussion the prosecutor protested: "This man [the witness] is on vacation, I have had him here for three days." Defendants' counsel thereupon asked that the prosecutor's remark be stricken and the jury be instructed to disregard it and that a mistrial be declared, all of which the court denied. Whether the remark of counsel required the grant of the relief requested rests largely in the discretion of the trial court and we are not impressed that such discretion was abused. State v. Lynn, Mo., 23 S.W.2d 139, 141[1]; State v. Nichols, 327 Mo. 1237, 39 S.W.2d 777, 779[4].

■ Specifications 11, 12, and 13 relate to the admission of testimony of police officers who investigated the crime and will be treated together. The vicinity of the crime was described as a rundown neighborhood; some of the visual examination was made on the following day, and pictures of the scene taken then were admitted in evidence. The verbal descriptions and the photographs were relevant in that they tended to enable the jury to understand better the physical surroundings; the court did not err in admitting them. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 107 [26–28]; State v. Tevis, Mo.App., 340 S.W.2d 415, 420[12].

■ A transcript of the testimony of the defendant Williams as a witness at the trial of another case growing out of the same occurrence was identified as Exhibit 19 by the court reporter who took and transcribed the testimony. The transcript was properly identified and was admitted in evidence. The nature of the other case and the fact that Williams was a party defendant were not disclosed to the jury. In his testimony, as shown by the transcript, Williams described his activities of the evening in greater detail than in his written statement given to the police and added other material evidence. In order to conform to certain objections of the defendant, only a portion of the transcript was read to the jury. His testimony contained matters that constituted admissions against interest in the case on trial, and the court did not err in admitting the exhibit in evidence. State v. Taylor, Mo., 324 S.W.2d 643, 646–647[6], 76 A.L.R.2d 671.

■ The court did not err in failing to instruct the jury that they must find as a matter of fact that a conspiracy existed between the defendants "before they can consider any evidence in connection with the alleged conspiracy against the defendant, Robert Williams." This prosecution is not for the offense of a conspiracy. See § 556.120 and § 556.130, RSMo 1959, V.A.M.S. As shown by the instructions, the theory of submission was the joint action of the defendants with a common intent in the commission of the murder. The instructions defined aiding and abetting. The defendant does not point out specifically "any evidence in connection with the alleged conspiracy" that he contends violated his rights and we have been unable to discover any.

■ The defendant Williams further complains of Instructions 1 and 2 submitting first degree and second degree murder. Contrary to his contentions, we find that the instructions do not improperly set forth the law relative to "concert of action" and do not permit a finding of guilt on presence alone. The instructions do not improperly assume that the defendant acted in concert with another in the commission of the

crime. It was not improper, after instructing on concert of action, to permit the jury to find one defendant only guilty if he "acting alone" shot Stewart since it was for the jury to determine whether or not there was a concert of action.

 The defendant attacks the giving of Instruction 3 covering manslaughter on the ground that the instruction improperly defined "justifiable homicide" and improperly limited the self-defense theory to the defense "of one's person". The definition of justifiable homicide refers to "the lawful defense of one's person as more fully explained to you in instructions numbered 6 and 7." These instructions, and particularly No. 7 applying to the defendant, do not have the limitation of which the defendant complains. Amplified as it is by Instructions 6 and 7, Instruction 3 is not misleading. Other complaints against Instruction 3 have been disposed of adversely to the defendant in connection with our previous rulings. The assignment is denied.

Next the defendant asserts that Instruction No. 4 is erroneous because it improperly shifted the burden of proof and deprived the defendant of the presumption of innocence by requiring the jury to convict the defendant unless they had a substantial doubt as to his guilt. The complaint the defendant makes against this form of instruction on burden of proof has been held not to constitute reversible error in numerous cases. See State v. Cheatham, Mo., 340 S.W.2d 16, 20[10], and State v. Livers, Mo., 340 S.W.2d 21, 24 [2]. The claim of error is denied.

Finally the defendant complains of Instruction No. 6. This instruction on self-defense pertains solely to the defendant Cox. Instructions 6 and 7 applying to Williams did not limit or improperly define the defense. The assignment is denied.

We have considered all of the questions properly preserved and have decided them adversely to the defendants. We have also examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08 and find them to be proper in form and free from error. Accordingly the judgment of conviction and sentence as to each defendant is affirmed.

All concur.