Ward Sturgis WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

No. 15278.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 22, 1988.

Robert P. Baker, Sarcoxie, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

On April 2, 1985, per a plea agreement, Ward Sturgis Williams ("movant") entered a plea of guilty to manufacturing marihuana, § 195.020.1, RSMo Cum.Supp.1984, and was sentenced to 10 years' imprisonment. He subsequently brought a proceeding un-

der Rule 27.26, Missouri Rules of Criminal Procedure (18th ed. 1987), to vacate the conviction. After an evidentiary hearing, the circuit court, in an order containing findings of fact and conclusions of law, denied relief. Movant appeals.

Three assignments of error are presented in movant's brief. Summarized, they are: (1) movant's plea of guilty was "tainted" by incorrect advice from his lawyers and the judge, (2) the prosecutor violated the plea agreement by filing a "vindictive" commitment report or, if that was allowable under the bargain, movant's lawyers rendered ineffective assistance in failing to warn movant about such possibility, and (3) the motion court erred in denying movant's request to disqualify the prosecutor from representing the State at the evidentiary hearing.

Movant and his wife, Roslyn, were each charged in the Circuit Court of Barry County in September, 1984, with manufacturing marihuana. Applications for change of judge and change of venue resulted in the cases being transferred to the Circuit Court of Lawrence County, with Honorable Robert Yocom, Associate Circuit Judge of the Circuit Court of McDonald County, being assigned as special judge.

In December, 1984, Judge Yocom set movant's case for trial April 2, 1985. On March 13, 1985, movant filed a motion to suppress evidence. On March 28, 1985, movant, Roslyn, their attorneys (J. Edward Sweeney and Stephen R. Soutee), and Barry County Prosecuting Attorney John A. Lewright appeared before Judge Yocom in Newton County. In the transcript of that proceeding, we find this:

"THE COURT: ... The proceeding today was by agreement of counsel and the Court to be held in Newton County, ... which is in the nature of a pre-trial conference and consider multiple and several motions pertaining to suppression of evidence and other matters.... The parties have indicated that they have reached a plea bargain in these cases and in fact these cases will be pleas of guilty in Lawrence County on April 2nd, 1985, and that there will be no jury trials ...

....

Before we go any further, I should advise the defendants that they have a right against self-incrimination. They do not have to make any incriminating statements and anything they say can and will be used, in the event there is not a plea of guilty to convict them at trial. Now, Gentlemen, does counsel agree with everything I've stated into the record up to this point?

MR. SWEENEY: Correct.

MR. SOUTEE: Yes, Your Honor.

MR. LEWRIGHT: Yes, Your Honor.

THE COURT: Very well. All right, counsel for the defense, do you have anything for the record with regard to Ward Sturgis Williams? Mr. Sweeney.

MR. SWEENEY: Ward, you understand you have been charged with the cultivation of marijuana, is that correct?

MR. WILLIAMS: Yes, I do.

MR. SWEENEY: Arising out of an occurrence in Barry County, Missouri, is that correct?

MR. WILLIAMS: Yes.

MR. SWEENEY: In fact, did you participate in the cultivation of same in Barry County, Missouri?

MR. WILLIAMS: Yes, I did.

[Roslyn, questioned by Sweeney, then made a similar admission.]

THE COURT: Very well. So far as I can tell, the thing for us to do then is to recess this matter and take up these cases in Lawrence County on April 2nd."

The reason movant's plea of guilty was not entered March 28, 1985, is found in the testimony of prosecutor Lewright during the evidentiary hearing on the motion to vacate. He explained:

"We were going to take the plea of guilty, and I ... brought up the issue, well, could he come back on a 27.26 because we're not in Lawrence County where the case is officially at.

....

And, therefore, the Judge said, why, I want to see if they want to plead guilty, 'cause we were, we had like 30 people there for the, uh—suppression

hearing. They came in, and he asked them if they were going to want to plead guilty, and I believe they said yes...."

On April 2, 1985, movant, Roslyn, and the same attorneys appeared before Judge Yocom in the Circuit Court of Lawrence County. Questioned by Judge Yocom, movant stated there was a "plea bargain" under which (a) he and Roslyn would each plead guilty, (b) he would be sentenced to 10 years' imprisonment, and (c) Roslyn "goes free on probation." Prosecutor Lewright clarified the bargain as to Roslyn, explaining that she would receive a sentence of 5 years' imprisonment, execution of the sentence would be suspended, and she would be placed on probation for 3 years. Movant confirmed that those were the conditions of the bargain. Movant then entered his guilty plea and received the specified sentence.

At the evidentiary hearing on his motion to vacate, movant testified that when the plea bargain was made on March 28, 1985, his attorneys told him that the purpose of appearing before Judge Yocom on that date was "[s]o we couldn't back out on April the 2nd." Movant added that his attorneys did not contradict Judge Yocom's statement that any incriminating statement by movant could and would be used to convict him at trial in the event there was no guilty plea.

Testifying further, movant asserted that on the morning of April 2, 1985, prior to appearing before Judge Yocom, he told attorneys Sweeney and Soutee, "I thought we'd [agreed to plead guilty] in haste without enough time to think about it, and that if there was a way to undo it, then we wanted to return and have the suppression hearing." Then this:

"Q ... What response did you get from your attorneys to the statement you just told me?

A They told us that we were committed, that we had already entered guilt, informal guilty pleas on March the 28th, and if we, if we said something that made the Judge not accept the guilty plea, they would use the statement of March 28th to convict us.

Q Okay.

A And that they no longer needed, the State no longer needed to win a suppression hearing. At that point, I was committed.

Q All right. Did you believe your attorneys when they told you this?

A Yes."

Roslyn, testifying at the evidentiary hearing, recalled conferring with attorneys Sweeney and Soutee on April 2, 1985, prior to appearing before Judge Yocom. Roslyn's testimony:

"Q ... What, in the presence of the attorneys, what did you do regarding Ward's position?

A We told them that we had changed our minds, that I did not want him to plead guilty.

Q Did you feel he was sacrificing himself for you?

A Yes, I did.

. . . .

Q What response did Mr. Soutee and Mr. Sweeney make ... when you said you'd changed your minds?

A He said we had already pleaded guilty.

Q Who said?

A Mr. Sweeney, that we had already pleaded guilty, that if we backed out now, the Court would use it against us at a trial, and things would probably be harder on us in front of a jury.

Q Concerning this you had already pleaded guilty part and that being used against you, did you believe him?

A Yes."

Sweeney,[1] testifying at the evidentiary hearing, was asked by movant's counsel whether movant, after the proceedings of March 28, 1985, "was then in a position where he couldn't very well change his mind come April 2nd." Sweeney responded, "I wouldn't comment on that one way or the other, because he never asked to change his mind on April the 2nd." Then, this:

---

1. Now an Associate Circuit Judge of the Circuit Court of Barry County.

"Q Do you recall, okay, Mr. Williams being told at any time between the 28th and the 2nd of April, before we have the matters shown in the transcript, okay, that he could not very well change his mind regarding the plea, because he was already committed of record, uh, at the pretrial conference in Neosho on the 28th?

A I do not remember that."

Soutee, testifying at the evidentiary hearing, was questioned by movant's counsel about discussions with movant and Roslyn on April 2, 1985, prior to appearing before Judge Yocom. Soutee's testimony:

"Q ... what if anything do you recall either your saying or your associate, Mr. Sweeney, saying to Ward regarding the consequences of what he had done in Neosho?

A Told him there's a possibility those could be construed as judicial admissions and might be used against him in the trial of the case."

Later, during questioning of Soutee by the prosecutor, we find this:

"Q Did Mr. Williams ever tell you he wanted to withdraw his plea of guilty before April 2nd, between March 28th and April 2nd, that he no longer wished to pursue his guilty plea and he wished to plead not guilty?

A Between the morning we came here on the 2nd and the time—

Q No, excuse me, between the time we left Neosho on the 28th to the time we came here on the 2nd?

A I don't recall him having made any mention of that to me, no."

Redirect examination by movant's counsel:

"Q I want to make sure I understand your last answer, Mr. Soutee. Am I to understand that you, do you contend that he did not ask about withdrawing his plea, or do you not remember one way or another whether he asked?

A Before we arrived here on the morning for the plea itself, I do not recall him having it, and no, I don't, I'm saying I don't think it occurred in a conversation.

Q Okay. I may have misunderstood you. Do you intend to imply that there was some mention of it, then—

A No.

Q —when he arrived here on the 2nd?

A There was some discussion, most certainly, when he came here.

Q Okay. That's the, so you're not saying it never happened, it just didn't happen before the 2nd?

A To clarify it, there were no conferences between Mr. Williams and Mrs. Williams and myself after we left Neosho and when we got over here that would have involved any discussions of withdrawing the plea bargain.

Q Okay. Okay, but, as you testified earlier, there was such a discussion on, when you got here on the morning of the 2nd?

A Yes."

On further cross-examination by the prosecutor:

"Q You used the terms in generality on the 2nd. Did he maintain he wished to pursue his innocence or plead not guilty on the 2nd in the morning?

A There were some discussions, but ultimately, the decision was to go ahead with the plea bargain arrangement as it was made that morning.

Q Okay, and who made that decision?

A Mr. Williams and Mrs. Williams."

During the guilty plea proceeding on April 2, 1985, a three-page document signed and sworn to by movant was presented to Judge Yocom. It contained questions numbered 1 through 37, each followed by an answer where appropriate. Movant confirmed in open court that the answers were his. Pertinent to the issues before us, the document contained this:

"11. Do you know that under the Constitution you are not compelled to plead guilty but may plead not guilty and have a trial by jury to determine whether or not you are guilty of the charge in the information Yes

. . . ."

13. Do you know that under the Constitution you do not have to and cannot be compelled to admit to the commission of a crime  Yes

14. Do you know that under the Constitution you have the right to have the witnesses against you appear and testify in your presence at a jury trial  Yes

15. Do you realize and understand that if you plead guilty to this charge, that you have waived the Constitutional rights just mentioned  Yes

16. Have you consulted with your attorney concerning this case  Yes

. . . .

18. Has he advised you as to the rights just now explained to you  Yes

. . . .

20. Has your attorney advised you that you may plead not guilty and have a jury trial and that he will represent you and conduct the trial of the case  Yes

. . . .

24. Has he persuaded or induced you to plead guilty against your will  No"

In the colloquy between Judge Yocom and movant during the guilty plea proceeding April 2, 1985, we find this:

"Q. ... Do you understand that you have a right to have a jury determine your guilt or innocence of the charge against you at a speedy and public trial?

A. Yes.

Q. Do you understand that by pleading guilty, you waive that right, will not have a jury trial?

A. Yes.

Q. Understanding that, do you still wish to plead guilty?

A. Yes.

. . . .

Q. Do you understand that at a trial of the charge against you, you would be presumed innocent until proven guilty, and your guilt must be proven—proved by evidence which convinces the jury of your guilt beyond a reasonable doubt, that all 12 jurors must agree as to your guilt?

A. Yes.

Q. Do you understand that you have a right not to say anything which might incriminate you with regard to the charge against you?

A. Yes.

Q. Do you further understand that by pleading guilty, you are making an incriminating statement with regard to that charge, and that the presumption that you're innocent and the requirement that a jury be convinced of your guilt beyond a reasonable doubt are lost to you?

A. Yes.

Q. Understanding those things, do you still wish to plead guilty?

A. Yes.

. . . .

Q. Do you understand that by pleading guilty, you waive your right to trial and admit the essential elements of the charge against, which is as follows: That you manufactured marijuana on or about September 20th, 1984, in Barry County, Missouri, and that marijuana is a controlled substance?

A. Yes.

. . . .

Q. Very well. What's your education, Mr. Williams?

A. I have a business degree from Northeast Missouri State in Kirksville, Missouri.

. . . .

Q. ... Mr. Williams, you have heard the statements of the Prosecuting Attorney, and your own attorneys, and my statements. I want to inquire at this time, has anything happened here that was not in accord with what you understood would happen?

A. No.

Q. Do you think that you—Do you feel that you have been fairly treated here this morning?

A. Yes, sir."

The motion court's findings of fact included these:

"3. On March 28, 1985 Movant and his wife appeared, by agreement of all parties, at the courthouse in Neosho,

Missouri for the purpose of hearings on Motions to Suppress filed in their cases. At that time, both Movant and his wife made the decision to enter pleas of guilty in their respective cases. As stated by Movant in his motion, both Movant and his wife appeared before the trial judge at that time and entered 'informal' pleas of guilty to their respective crimes.

. . . .

14. Movant never asked the trial court to allow him to withdraw his plea of guilty of March 28, 1985 or his plea of guilty of April 2, 1985.

15. Movant's plea of guilty of March 28, 1985 and his plea of guilty of April 2, 1985 were both made by Movant voluntarily and intelligently with full understanding of the charge and the consequences of the plea and with an understanding of his rights attending a jury trial and the effect of a plea of guilty on those rights."

The motion court's conclusions of law included these:

"5. . . . Movant was not forced to enter the plea of guilty on April 2, 1985 and did not enter the plea because of any incorrect legal advise [sic]. Movant entered the plea because he wanted to make the plea. Movant's plea of guilty on April 2, 1985 was made knowingly, intelligently, freely, and voluntarily with a full understanding of the charge and the consequences of the plea.

. . . .

9. This court rejects the testimony of Movant in support of his Motion, even as to those matters on which no contrary evidence was offered.

. . . .

12. Movant was not denied effective assistance of counsel."

Movant's first point is:

"The court below erred in concluding . . . that Movant's guilty plea of April 2, 1985, was made knowingly, intelligently, freely and voluntarily, and not because of any incorrect legal advice, because: all of the evidence demonstrated that Movant was incorrectly advised, by both his lawyers and by the Judge, that his 'informal' guilty plea of March 28, 1985, could and would be used against him at trial in the event that he attempted to plead not guilty, and the same Judge failed to inform the Movant, in violation of Rule 24.02, that he had the right to plead not guilty or to persist in a plea of not guilty, in consequence whereof, Movant's guilty plea of April 2, 1985, was tainted with both ignorance and involuntariness."

Rule 24.02, referred to by movant in the above point, is set forth below.[2]

Movant begins his argument under his first point by directing our attention to Rule 24.12, Missouri Rules of Criminal Procedure (16th ed. 1985), which provided:

"At any time after the filing of the . . . information the court . . . may order one or more conferences to consider such matters as will promote a fair and expeditious trial. The court shall make a record of the matters agreed upon. No admission made by the defendant . . . at a conference shall be used against the defendant unless the admissions are reduced to writing and signed by the defendant and his attorney. . . ."

Movant maintains that under Rule 24.12, his admission in open court on March 28, 1985, that he participated in the cultivation of marihuana could not have been used against him had he thereafter refused to plead guilty. That being so, says movant, he received "incorrect legal advice" from two sources. First, according to movant, he was misadvised by Judge Yocom when the latter, on March 28, 1985, stated that anything movant said on that occasion could and would be used to convict him at

2. Rule 24.02, Missouri Rules of Criminal Procedure (16th ed. 1985), provided, in pertinent part:

" . . . .

**(b) Advice to Defendant.** . . . before accepting a plea of guilty, the court must address the defendant personally in open court, and inform him of, and determine that he understands, the following:

. . . .

3. That he has the right to plead not guilty or to persist in that plea if it has already been made . . ."

trial if there was no plea of guilty. Second, argues movant, he was misadvised by his lawyers on April 2, 1985, prior to entry of the guilty plea, that the incriminatory statement of March 28 would be used against him in the trial of the case if he backed out of the plea agreement.

At the evidentiary hearing on his motion to vacate, movant testified that had he known about Rule 24.12 prior to April 2, 1985, he would not have entered his plea of guilty on that date.

Movant's first point obviously hinges on the premise that his incriminatory statement of March 28 could not have been used as evidence by the prosecutor to convict movant had he elected to stand trial instead of pleading guilty. Our evaluation of that hypothesis suggests it is not as unassailable as movant would have us believe.

First, it is arguable whether Rule 24.12 applied to movant's incriminatory statement of March 28. The ostensible purpose of the rule is to expedite a *trial* by identifying, ahead of time, matters about which there is no dispute and upon which agreement can be reached, thereby eliminating the necessity of formal and time-consuming proof. That was clearly not the purpose of movant's incriminatory statement of March 28. Once the plea agreement had been made, there was no longer any reason to identify items concerning which the parties might be able to stipulate at trial. There was, however, a possibility that movant and Roslyn would decide, between March 28 and April 2, to repudiate the plea agreement and persist in their pleas of not guilty. As numerous witnesses were present in Newton County for the scheduled suppression hearing on March 28, Judge Yocom was understandably reluctant to cancel such hearing without assurance that the cases would be concluded by pleas of guilty five days hence. One way to demonstrate that movant and Roslyn would not balk when the time arrived for the guilty pleas was for them to admit, in open court under questioning by one of their attorneys, that they had indeed committed the crime with which they were respectively charged, an admission that

might thereafter constitute evidence against them in the event they declined to plead guilty. It is thus debatable whether the proceeding of March 28 during which movant uttered his incriminatory statement was a conference of the type covered by Rule 24.12.

If the rule did not apply, the question becomes whether there was any other bar to the use against movant of his incriminatory statement, had he decided to stand trial.

The State, in its brief, argues that movant's incriminatory statement was "of the nature" of a judicial admission. Citing *State v. Cox*, 352 S.W.2d 665 (Mo.1961), the State asserts that as a general rule, prior judicial admissions are admissible as evidence in a later court proceeding.

*Cox* approved the use against an accused of testimony he had given at an earlier trial. *Id.* at 674. *Cox*, therefore, did not present circumstances identical to those here.

Movant, in support of his contention that his incriminatory statement of March 28 could not have been used as evidence against him had he stood trial, cites *State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976), and *State v. Neal*, 649 S.W.2d 261 (Mo.App. 1983). In *Hoopes*, the accused made an incriminatory written statement as part of a plea agreement under which he would plead guilty to robbery and the prosecutor would dismiss a murder charge. The prosecutor subsequently breached the agreement by trying the accused for both the robbery and the murder, using the incriminatory statement as evidence. Reversing the conviction of both crimes, the Supreme Court of Missouri held that when the prosecutor refused to perform his part of the bargain, the accused's incriminatory statement "became involuntary in law and was not admissible on the trial of this case for any purpose whatever." *Id.* at 36–37[7].

In *Neal*, the accused, pursuant to a plea agreement under which he promised to plead guilty to first degree murder (reduced from capital murder), made an incriminatory statement in open court during the plea proceeding. Later it developed

that the prosecutor had failed to file an amended information charging first degree murder; consequently, the conviction was vacated. The accused was then tried for capital murder, and the prosecutor introduced as evidence the accused's incriminatory statement from the earlier plea proceeding. This Court, relying on *Hoopes*, held that inasmuch as the prosecutor had failed to keep his part of the agreement, the accused's incriminatory statement was inadmissible at the subsequent trial. *Id.* at 262[1].

Neither *Hoopes* nor *Neal* presented a situation comparable to the instant case in that here, at the time movant and Roslyn conferred with their attorneys on April 2, 1985, prior to appearing before Judge Yocom to enter their guilty pleas, there had been no breach of the plea agreement by the prosecutor. Thus, while attorneys Sweeney and Soutee could have used *Hoopes* and *Neal* to argue that movant's incriminatory statement of March 28 could not be used as evidence against him if he stood trial, neither *Hoopes* nor *Neal* conclusively resolved that issue and, for the reasons that follow, it is unnecessary that we do.

The motion court, as shown by its conclusion of law number 9, quoted earlier, disbelieved movant's testimony. The motion court also determined, as shown by its conclusion of law number 5, quoted earlier, that movant did not enter his plea of guilty because of any incorrect legal advice. It is implicit from that conclusion that the motion court also disbelieved the testimony of Roslyn concerning the advice she and movant received from their attorneys on April 2, 1985, prior to appearing before Judge Yocom.

Credibility of the witnesses, including movant, was for the motion court to determine. *Campbell v. State*, 515 S.W.2d 453, 455–56[2] (Mo.1974). The motion court could properly reject testimony on behalf of movant, even where uncontradicted. *Shoemake v. State*, 462 S.W.2d 772, 775[4] (Mo. banc 1971).

Dismissing the testimony of movant and Roslyn as incredible, the motion court was left with only Soutee's recollection of the advice given movant by his lawyers on April 2, 1985. That advice, as we have seen in Soutee's testimony (quoted *supra*), was that there was a *possibility* that movant's incriminatory statement of March 28 could be construed as a judicial admission and *might* be used against him in the trial of the case.

As observed earlier, it is at least arguable that Rule 24.12 would not have foreclosed the prosecutor from using movant's incriminatory statement against him in the event of trial, and it is likewise arguable that if Rule 24.12 supplied no barrier, none other existed. We therefore find nothing amiss in movant's lawyers telling him there was a *possibility* that his incriminatory statement could be construed as a judicial admission and *might* be used against him if the case were tried. Indeed, given the arguable issues we have discussed, a careful attorney could hardly have given sounder advice.

Judge Yocom's "advice" to movant regarding the admissibility of his incriminatory statement of March 28 was, of course, more definite than that of movant's attorneys. Judge Yocom, it will be remembered, told movant on March 28 that anything he and Roslyn said could and would be used to convict them at trial in the event there was not a plea of guilty. Movant, however, was evidently dubious about that. Soutee, as we have seen, recalled that the subject arose during a discussion April 2, 1985, prior to appearing before Judge Yocom for entry of the guilty plea, and that movant was given the advice reported *supra*. That carefully phrased advice indicated, contrary to Judge Yocom's admonition, that the admissibility of movant's incriminatory statement of March 28 was not a foregone conclusion, but was instead a debatable issue.

The motion court was not obliged to believe movant was convinced his admission of March 28 could be used against him if he stood trial, or to believe movant's testimony that he would not have entered his plea of guilty had he known about Rule 24.12 prior to entering it. *State v. Hurtt*, 509

S.W.2d 14, 16[5] (Mo.1974). The record reveals several compelling reasons for movant to plead guilty per the plea agreement. Those reasons, discussed below, are wholly unrelated to the question of whether movant's admission of March 28 could be used against him if he stood trial.

Sweeney, testifying at the evidentiary hearing, disclosed that even though he and Soutee were prepared for the scheduled suppression hearing on March 28, 1985, Sweeney felt they "would lose it," and he and Soutee told movant "we didn't think we would win it." Later in Sweeney's testimony, we find this:

"Q ... When advising [movant] as to your opinion regarding whether the deal offered was good for him, did you include, uh, the factors that you were considering the likelihood of his wife being convicted of this offense?

....

A Yes, yes, I did take it into consideration, and quite clearly, we advised them and Mr. Williams that we felt his wife would or certainly could be convicted. We told them that on an appeal, she might have a shot at the Court of Appeals, but in the interim if her bond was substantially raised, she might spend 12 to 18 months fighting the appeal, but as far as a conviction in the Trial Court, we felt she could be convicted.

Q Okay. And then, I take it that you were considerably more confident, uh, if that's the right word to use, that Mr. Williams would be convicted than you were that his wife would be convicted?

A Absolutely."

Movant, in his testimony at the evidentiary hearing, stated he wanted to litigate his "Fourth Amendment claims" at the scheduled suppression hearing March 28, 1985, but he was afraid Roslyn would be sent to prison unless he accepted the plea agreement. His testimony:

"Q ... Eventually, did you get [an agreement] that you thought protected her?

A Yes.

Q All right. Did you have any reason other than your desire to protect her to say yes, I'll accept this one?

A That was the only reason.

....

Q When you did finally say yes, I'll take this, okay, what was Roslyn's reaction? How'd she feel about that, if she mentioned it to you in the presence of your attorneys?

A She was upset.

....

Q Nevertheless, you did it because of your concerns for her?

A Yes."

Another inducement for movant's acceptance of the plea agreement was a provision thereof by which he was granted a "stay of execution" from April 2, 1985, until April 22, 1985, so he could "relocate" Roslyn and their children in the state of Texas. Movant was permitted "to travel to the Dallas/Fort Worth area and return during his stay of execution."

Another inducement for movant to accept the plea agreement was the assurance his prison sentence would not exceed 10 years. Without the agreement he faced the possibility of a 20–year sentence. § 195.200.1(1), RSMo Cum.Supp.1984. Given the magnitude of movant's marihuana operation,[3] movant could have realistically feared he would receive a sentence exceeding 10 years' imprisonment if he stood trial.

Finally, there was evidence that movant was hopeful of an early release from imprisonment. Soutee, testifying at the evidentiary hearing, recounted that on March 27, 1985, the day before the court appearance in Newton County, he contacted officials of the "Department of Corrections" in an effort to determine the likelihood of parole for movant. In a conference that evening (March 27), Soutee told movant "he could reasonably expect to be treated like anybody else ... and to have a parole ... assuming he kept his nose clean, based on the ordinary circumstances of most prisoners." Soutee further advised movant that there was a possibility for weekend fur-

---

**3.** Footnote 4, *infra.*

loughs and Christmas visitation, depending upon how he was classified and where he was placed.

■ In sum, there was evidence of several substantial reasons for movant to plead guilty April 2, 1985, per the plea agreement. The motion court found, in conclusion of law number 5 (quoted *supra*), that movant did not enter his plea of guilty because of any incorrect legal advice, but instead entered the plea knowingly, freely, voluntarily and because he wanted to.

Our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j), Missouri Rules of Criminal Procedure (18th ed. 1987); *Warren v. State*, 482 S.W.2d 497, 499[1] (Mo. banc 1972). Given the evidence discussed above, we hold that the motion court could reasonably reject, as it did, movant's contention that he pled guilty because he believed his incriminatory statement of March 28 could be used against him if he stood trial, and that the motion court's conclusion of law number 5 is not clearly erroneous.

■ The second component of movant's first point is that Judge Yocom, prior to accepting movant's guilty plea on April 2, 1985, failed to comply with Rule 24.02, quoted *supra*, by neglecting to advise movant that he had the right to plead not guilty or to persist in that plea if it had already been made. Movant maintains that the "improper advice" he had received earlier from Judge Yocom and the attorneys "could have been corrected had Rule 24.02 been complied with."

The argument is without merit. It is manifest that even though Judge Yocom, on April 2, 1985, did not, in addressing movant, utter the words of Rule 24.02(b)3, movant was painstakingly informed that he had the right to plead not guilty and to submit the question of his culpability to a jury. The questions in the plea document, quoted *supra*, and movant's answers thereto, together with the colloquy between Judge Yocom and movant on April 2, also quoted *supra*, amply demonstrate that movant was made fully aware that he could maintain his plea of not guilty and submit his fate to a jury. The motion court, in its finding of fact number 15, quoted *supra*, found that movant's plea of guilty was made with full understanding of his rights attending a jury trial and the effect of a plea of guilty on those rights. On the record before us, that finding is not clearly erroneous. Movant's first point is, consequently, denied.

Movant's second point complains about the commitment report filed by Prosecuting Attorney Lewright with the Division of Adult Institutions, pertinent portions of which appear below.[4] Movant maintains it was "a violation of the plea bargain's implicit terms for the prosecutor to use the commitment report for the purpose of influencing parole considerations adversely," or, in the alternative, attorneys Sweeney and Soutee "were duty-bound to consider the fact that a vindictive commitment report could be made after the plea bargain and to warn movant accordingly." Thus, says movant, his plea of guilty was either induced by trick or was "tainted by invol-

4. The commitment report stated:

"Defendant was growing marihuana in a 10,-000 square foot greenhouse in Barry County, Missouri. By looking at electrical useage [sic], the operation had gone on for more than a year. When arrested the DEA officers estimated the value of the marihuana to the Defendant (not street value which is considerably higher) at nearly 2 million dollars. The system was fully automated with pumps, humidifiers, air conditioners, and furnaces; it was a year round operation. According to the DEA this was the most sophisticated marihuana operation he had seen and was definitely the largest in his 13 state area. Because of the extent and sophistication of this operation, I am adamantly opposed to an early release. Our county as well as the rest of Southwest Missouri has worked hard at attempting to eradicate marihuana cultivation. This operation was very large with apparently an excellent distribution system set up to handle the volume of the marihuana grown. Unless the Defendant is made to serve a substantial period of time in the state penn [sic], we will be unable to show that it is not profitable to have large drug operations in Missouri. I request that I be informed to what penn [sic] he is sentenced and that I be notified before he is released on parole."

untariness and ignorance as a result of inadequate assistance of counsel."

As to the first component of movant's second point, § 217.305.2(3), RSMo Cum. Supp.1984, provided that the officer delivering a person to the Division of Adult Institutions for confinement was required to deliver, on a form prescribed by the Division, information regarding the "crime for which sentenced and circumstances thereof," to be prepared by the prosecutor charged with the prisoner's prosecution.

Movant concedes he can find no statute or rule prohibiting a prosecutor from doing as Lewright did in the instant case, and the only Missouri case cited by movant, *Shepard v. State*, 549 S.W.2d 550 (Mo.App. 1977), is not on point. There, the accused, pursuant to a plea agreement, pled guilty to two charges. The prosecutor said he had no recommendation as to sentences. Sentencing was deferred pending a presentence investigation. Later, at time of sentencing, the prosecutor recommended the maximum sentence on each charge. The issue was whether such recommendation violated the plea agreement.

■ In the instant case, the plea agreement contained no provision regarding the commitment report. The agreement dealt only with (a) the length of movant's prison sentence, (b) Roslyn's sentence and simultaneous probation, and (c) the "stay of execution" for movant until April 22, 1985. All of those provisions were scrupulously honored. Nothing in the agreement—explicitly or implicitly—barred Lewright from informing the Division of Adult Institutions that he was opposed to an "early release" for movant and that movant should serve a substantial portion of the agreed sentence as a deterrent to other marihuana growers.

The closest case we find is *United States v. White*, 724 F.2d 714 (8th Cir.1984). There, the accused entered a plea of guilty under a plea agreement in which the prosecution would refrain from making any recommendation about sentence. The accused was sentenced to seven years' imprisonment. Later, he filed a motion to reduce

his sentence. The prosecution opposed the motion. The accused contended that by doing so the prosecution had breached the agreement. The court disagreed, holding that the prosecution, in opposing the accused's application for reduction of sentence, was not recommending a sentence but merely arguing in support of a sentence already assessed. *Id.* at 717[4].

Here, Lewright, in the commitment report, did not endeavor to increase movant's sentence, but only to ensure that movant served a substantial part of it.

In the instant case, Lewright was required by § 217.305.2(3) to prepare the commitment report. Roslyn, at the evidentiary hearing on the motion to vacate, was asked whether she believed any of the information in the report was untrue. She answered, "No, sir."

We hold, as did the motion court, that the plea agreement did not bar Lewright from filing the commitment report, and that nothing in the report violated the plea agreement.

The second component of movant's second point is that attorneys Sweeney and Soutee rendered ineffective assistance in failing to warn movant that the prosecutor could file a "vindictive" commitment report. Movant's perturbation about the report emanates from a denial of parole on September 10, 1985, after he had been imprisoned some 6 months.[5] While the record does not reveal the reason for the negative parole decision, it is apparent that movant attributes it to the report. Asked at the evidentiary hearing whether he would have accepted the plea agreement had he known Lewright would attempt to adversely influence his chances for parole, movant replied, "I don't think so."

We approach this facet of the appeal by observing that the commitment report addresses two subjects. First, in obedience to § 217.305.2(3), it narrates the circumstances of movant's crime. In that regard, movant could not have reasonably expected the Board of Probation and Parole to decide whether to free him without knowing

---

**5.** Movant was credited with 30 days' jail confinement against his sentence.

something about the felony that caused his incarceration. Whether such data came from the court, the arresting officers, the prosecutor, or a parole investigator, it would have been unreasonable for movant to believe a parole decision would be made by officials unacquainted with the facts of his offense.

While a prisoner may proclaim he had a certain belief and may subjectively believe it, if it was unreasonable for him to entertain such a belief at the time he pled guilty, post-conviction relief will be denied. *McMahon v. State*, 569 S.W.2d 753, 758[5] (Mo. banc 1978). Thus, even if movant—a college graduate—did harbor the belief that the details of his crime would remain undiscovered by parole authorities, such belief, being unreasonable, would not entitle him to relief.

The second item appearing in the commitment report is Lewright's position regarding parole. On that subject, the report demonstrates that Lewright was opposed to "early release" because of the extent and sophistication of movant's marihuana operation, not because of any personal animosity toward movant. Lewright's worry that a swift parole for movant would weaken the deterrent effect of the conviction on other potential marihuana producers was a prosecutor's legitimate concern. As Lewright had insisted on a 10–year prison term for movant, movant could have scarcely expected Lewright to acquiesce in a speedy parole.

Asked at the evidentiary hearing why he wanted to be notified before movant was paroled, Lewright explained that movant had threatened a prosecution witness on March 28, 1985, and he (Lewright) had been asked by a law enforcement officer to find out when movant would be freed.

Movant cites no case where ineffective assistance of counsel has been predicated on a lawyer's failure to advise an accused, in connection with a plea agreement under which the accused receives a specified prison sentence, that the prosecutor may include in the commitment report a recommendation against early parole. That is not surprising in view of the number of

factors considered by parole officials in determining whether parole will be granted. Soutee, testifying at the evidentiary hearing, explained that such factors included good behavior, cooperation within the corrections system, rehabilitation, and manifestation of remorse.

An attorney renders ineffective assistance in a criminal case only where he fails to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). The motion court, in its conclusion of law number 12, quoted *supra*, determined that movant was not denied effective assistance of counsel. On the record before us, we cannot brand movant's lawyers ineffective because they failed to tell him the prosecutor might include in the commitment report an objection to early parole. Movant's second point is denied.

Movant's final assignment of error avers that the motion court wrongly denied movant's application to disqualify Prosecuting Attorney Lewright from representing the State at the evidentiary hearing. According to movant, Lewright should have been disqualified because he was a material witness.

In support of the point, movant cites *State v. Hayes*, 473 S.W.2d 688 (Mo.1971), and *State v. Nicholson*, 7 S.W.2d 375 (Mo. App.1928). In each, the prosecuting attorney chose to present himself as a witness for the State in a criminal prosecution before a jury, and he testified on disputed factual issues.

In the instant case, *movant* called Lewright as movant's first witness at the evidentiary hearing, thus Lewright's role as a witness was not a role Lewright chose. Furthermore, there was little, if any, dispute about the matters concerning which Lewright was questioned by movant's counsel. The only instance where Lewright's credibility was even arguably in issue was the reference in the commitment report to the value of the marihuana and the characterization of movant's marihuana

operation as the largest in a 13–state area. Careful reading of that segment of the report discloses, however, that Lewright was simply setting forth information received from "DEA" officers and was not expressing his own version of the facts.

We are not presented here with a post-conviction proceeding where the outcome hinged on the credibility of a prosecutor's testimony, nor one where the prosecutor chose to offer himself as a witness for the State. Were we to accept movant's third point, we would enable any prisoner in a post-conviction proceeding to remove the prosecutor by the simple expedient of calling him as a witness on a trivial or undisputed matter. Such manipulation of the justice system cannot be countenanced.

Movant's third point is denied, and the motion court's order denying relief is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.